IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-125

No. COA20-384

Filed 1 March 2022

Durham County, No. 17 CVS 3710

DUNHILL HOLDINGS, LLC, Plaintiff/ Counterclaim Defendant,

v.

TISHA L. LINDBERG, Defendant/ Counterclaim Plaintiff,

TISHA L. LINDBERG, Third-Party Plaintiff,

v.

GREG LINDBERG, Third- Party Defendant.

Appeal by plaintiff/ counterclaim defendant and third-party defendant from order entered 1 August 2020[1] by Judge Orlando F. Hudson, Jr. in Superior Court, Durham County.  Heard in the Court of Appeals 27 April 2021.

> *Fox Rothschild LLP, by Matthew Nis Leerberg and Kip D. Nelson, for plaintiff/counterclaim defendant-appellant and third-party defendant-appellant.*

---

[1] This 2020 date reflects the file stamp on the order on appeal, but the order was actually rendered in 2019.  No party disputes this.  We know the date of the order's rendering was 2019 because the original and amended notices of appeal from the order are all from August 2019.

*Zaytoun Ballew & Taylor, PLLC, by Matthew D. Ballew, Robert E. Zaytoun, John R. Taylor, and N. Cole Williams for defendant/ counterclaim plaintiff, third-party plaintiff-appellee.*

STROUD, Chief Judge.

¶ 1    Appellants, Dunhill Holdings, LLC ("Dunhill") and Greg Lindberg, appeal from an order imposing sanctions on them for discovery violations and, pursuant to a previous opinion from this Court in this case, from a discovery order requiring them to submit their electronic devices for forensic examination. Because we find the trial court did not abuse its discretion in imposing sanctions and did not err in its choice of sanctions in most respects, we affirm in part. We vacate in part and remand because two paragraphs of the ordered sanctions are inconsistent with the remainder of the order or improperly bar objections, including objections for attorney-client privilege. Finally, since we affirm the relevant parts of the sanctions order, we dismiss the forensic examination issue as moot.

## I.    Background

¶ 2    This is the second appeal to this Court in this case. The first appeal concerned an order from 27 June 2018 ("June 2018 Order") that, *inter alia*, ordered Appellants to make certain electronic devices available for a forensic examination to determine if any relevant emails were deleted. *Dunhill Holdings, LLC v. Lindberg*, No. COA18-1112, 270 N.C. App. 820, *7, *10–11 [hereinafter "*Dunhill I*"] (unpublished). The

prior appeal dismissed the case "without deciding whether the appeal [was] an interlocutory appeal that does not affect a substantial right" and "refer[red the forensic examination issue] to the panel of this Court that will decide Dunhill and Greg E. Lindberg's appeals of the discovery order and the sanctions order together." *Dunhill I* at \*12. Based upon the prior opinion, this panel must address the sanctions order, and we will also address the discovery order at issue in the prior appeal.[2] *Id.* The prior ruling from this Court is the law of the case and thus binds us. *See, e.g., North Carolina Nat. Bank v. Virginia Carolina Builders*, 307 N.C. 563, 567, 299 S.E.2d 629, 631 ("[O]nce a panel of the Court of Appeals has decided a question in a given case that decision becomes the law of the case and governs other panels which may thereafter consider the case."). We therefore recount the facts and procedural history from *Dunhill I* and only include additional details where necessary to understand the sanctions order that was not before this Court in the prior appeal.

¶ 3        *Dunhill I* summarizes the initiation and pre-discovery occurrences in this lawsuit:

> Dunhill Holdings, LLC ("Dunhill") filed a complaint
> against Tisha L. Lindberg, as well as four former

---

[2] We also note that both Dunhill and Mr. Lindberg specifically incorporated the arguments made in their prior appeal through footnotes in their briefs in this appeal, thereby avoiding any potential preservation issue.

employees of Dunhill on 24 July 2017.[3] According to Dunhill, the company is owned by Greg E. Lindberg, who is "the founder and sole manager and member of Dunhill." Greg E. Lindberg and Tisha L. Lindberg married on 19 September 2003 and separated on 22 May 2017. In its amended complaint filed 24 August 2017, Dunhill described Tisha L. Lindberg as Dunhill's "Chief Executive Officer"; however, she denied this characterization in her answer, saying that "while [Mr.] Lindberg purported to call [her] the 'C.E.O.' of [Dunhill] on occasion, [Dunhill] never employed [Tisha L.] Lindberg in any capacity and [Dunhill] was merely a vehicle through which [Greg E.] Lindberg funded the personal lifestyle of the parties and their family . . . ."

Dunhill described itself as a "real estate holding company" in its amended complaint and the primary asset owned by Dunhill was the family home of Greg E. Lindberg and Tisha L. Lindberg on Stagecoach Drive in Durham, North Carolina. In its amended complaint, Dunhill claimed Tisha L. Lindberg took funds from Dunhill and it asserted claims against her for breach of fiduciary duty, constructive fraud, civil liability for theft and embezzlement, civil conspiracy, conversion and an action for accounting, in addition to claims for unjust enrichment, disgorgement, and civil conspiracy against the other Defendants.

In her answer, Tisha L. Lindberg moved to dismiss Dunhill's complaint for failure to state a claim for which relief may be granted under N.C. Gen. Stat. § 1A-1, Rule 12(b)(6), denying various allegations of Dunhill and asserting affirmative defenses of breach of fiduciary duty by Greg E. Lindberg, fraud, constructive fraud, equitable estoppel, waiver, ratification, actual authority, and laches.

She also filed a third-party complaint against Greg E. Lindberg and counterclaim against Dunhill, seeking "all

---

[3] In November 2017, the trial court granted each of the four employees' motions to dismiss for failure to state a claim pursuant to Rule of Civil Procedure 12(b)(6). N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) (2017).

right, title, and interest in the Key West House" and "all right, title, and interest in the tennis complex" Greg E. Lindberg allegedly promised to give her. Tisha L. Lindberg subsequently filed an amended third-party complaint against Greg E. Lindberg and a counterclaim against Dunhill, asserting breach of fiduciary duty, constructive fraud, indemnity, declaratory relief, abuse of process, malicious prosecution, intentional infliction of emotional distress, spoliation of material evidence, and for a constructive trust over the tennis court.

In her amended third-party complaint and counterclaim, Tisha L. Lindberg alleged Dunhill was merely an "alter-ego" of Greg E. Lindberg and was therefore liable for his actions. Dunhill and Greg E. Lindberg did not file an answer to Tisha L. Lindberg's counterclaim and third-party complaint or her amended counterclaim and third-party complaint, instead filing a motion to dismiss each complaint.

*Dunhill I* at *2–4. These motions to dismiss were later denied.

¶ 4 Before Appellants' motions to dismiss had been ruled on, Dunhill and Ms. Lindberg proceeded with discovery:

Dunhill served Tisha L. Lindberg with its first request for production of documents on 24 October 2017 and she replied with objections and responses on 22 December 2017. On 26 February 2018, Tisha L. Lindberg submitted her first set of interrogatories and request for production of documents to Greg E. Lindberg and Dunhill. Dunhill moved to compel discovery on 9 March 2018. Tisha L. Lindberg filed a motion to compel discovery and request for attorney's fees on 21 May 2018.

*Dunhill I* at *4. In relevant part, Ms. Lindberg's discovery requests included interrogatories, requests for document production, and a request for production for

forensic inspection of all electronic storage devices owned by Appellants "that [are] the repository for electronic messaging and communication." Appellants made a series of objections to the discovery requests. In response to the forensic examination request specifically, both parties objected:

> In his responses, Greg E. Lindberg responded as follows to this request:
>
>> Third Party Defendant objects to Request No. 23 on the ground that it is harassing, overly broad, unduly burdensome, not proportional to the needs of this case, not reasonably calculated to lead to the discovery of admissible evidence, and seeks information that is not relevant to the subject matter of the pending action.
>>
>> Third-Party Defendant further objects to Request No. 23 on the ground that, on its face it seeks production of records that are confidential or privileged, including records that are protected by the work product and attorney-client privileges, and violates the privacy rights of third persons who are not parties to this lawsuit.
>
> Dunhill made an identical response to this request.

*Dunhill I* at \*5.

Ms. Lindberg's motion to compel discovery argued the court should reject the objections proffered by Mr. Lindberg and Dunhill. In response to objections to the forensic examination, Ms. Lindberg argued she needed the examination to support her spoliation of evidence claim:

> Upon information and belief, Mr. Lindberg and Dunhill have intentionally attempted to destroy evidence from computers and electronic devices that is relevant to this matter. The spoliation of evidence by Mr. Lindberg and Dunhill was set out in the pleadings in this matter in Mrs. Lindberg's[4] Amended Counterclaims and Third-Party Complaint. For example, upon information and belief, Mr. Lindberg and Dunhill destroyed emails and computer files maintained by Mr. Lindberg's companies soon after Mr. Lindberg took out the *Ex Parte* Domestic Violence Protective Order and restricted her access to email servers. Requests for Inspection 23 and 24 to Dunhill and Requests for Inspection 23 and 24 to Greg Lindberg seek to inspect the computers, drives and devices of Mr. Lindberg and Dunhill, but they have refused to allow for this inspection. Mrs. Lindberg respectfully requests that the Court order such a forensic computer inspection.

Ms. Lindberg's spoliation claim in turn argued, *inter alia*, that Mr. Lindberg had deleted emails showing he gifted the tennis complex to Ms. Lindberg, thereby supporting her third-party claim for a constructive trust over the tennis complex.

¶ 6    The trial court heard the motions to compel from Ms. Lindberg and from Dunhill on 25 June 2018. As of the time of the hearing, neither Dunhill nor Mr. Lindberg had produced "a single document in discovery." Much of the hearing focused on the forensic examination issue, and Ms. Lindberg continued to argue that the forensic examination would support her spoliation claim as well as her claim the

---

[4] This document and many of the documents from this litigation refer to Appellee Tisha Lindberg as Mrs. Lindberg whereas throughout this opinion we refer to her as Ms. Lindberg. We refer to Tisha Lindberg as Ms. Lindberg because the briefing in this case referred to her with that title.

tennis complex was a personal gift.

¶ 7        Ms. Lindberg also argued the forensic examination would support her on two other liability issues.  First, she argued the forensic examination would uncover deleted emails that would prove she did not improperly take funds from Dunhill.  Second, Ms. Lindberg argued the deleted emails would support her claim for indemnification from Mr. Lindberg as to a deposit for a yacht vacation that Ms. Lindberg claims she made on behalf of Mr. Lindberg.

¶ 8        On 27 June 2018, the court entered orders compelling discovery by Ms. Lindberg and Appellants, awarding attorney's fees to each side, and ordering the forensic examination.  In the order granting relief to Ms. Lindberg, i.e. the June 2018 Order, the trial court rejected all but one of Appellants' objections to Ms. Lindberg's discovery requests, and the one sustained objection is not relevant here.  The trial court specifically concluded that, other than the one objection it sustained and the forensic examination objection, "all of the objections raised by Dunhill Holdings LLC and Greg Lindberg lack merit, fail to justify the refusal and failure to produce a single discoverable document as of the date of this hearing, and were interposed for an improper purpose of delay and avoiding any meaningful response."  As a result the June 2018 Order required Appellants to "fully and completely reply to each and every Interrogatory and discovery request for production of documents," with the exception of the one for which an objection was sustained, by 1 August 2018.  To make clear

which documents were covered, the June 2018 Order fully incorporated by reference the requests for discovery and Appellants' responses.

¶ 9        The June 2018 Order also granted Ms. Lindberg's request for a forensic examination with certain limitations:

In the order, the trial court found as follows:

> As to the request for a forensic examination of certain electronic devices, the Court . . . finds that there are circumstances whereby a forensic examination of the server housing the outlook email accounts used by the parties to this action during the time frame reaching back to the [] period when contested contentions of gifts of real estate valued in excess of one million dollars arose, would be beneficial in the ascertainment of truth. Such a forensic examination would disclose or shed light upon the question of whether or not there exists or existed crucial and relevant documentation that one party contends existed but was "scrubbed" and the other party conten[d]s never existed. . . . The Court further finds that considering the resources of the parties, a forensic examination of the server itself would not unduly burden or obstruct Dunhill Holdings LLC in its operations, nor has any credible evidence been presented that it would unduly interrupt or interfere with operations of any of the other LLC entities connected to Dunhill that may have possession of the server used by the parties to this litigation. There is some evidence that the server may be "owned" by a subsidiary, but all of the evidence shows that any other entity having such an interest exists under the control of Mr. Lindberg. . . . The concern about disclosing any confidential or privileged information is unsupported by any credible evidence or argument, and the inquiry in

the forensic analysis can be conducted to [sic] a[s] to obviate any prejudice to Dunhill or to Mr. Lindberg should any such attorney-client privileged data be present.

The trial court concluded that:

> The objection to the request for a forensic examination should be overruled for the reasons set forth in the findings [] above. The Court is authorized to order a forensic examination after weighing and balancing the burdens and rights of the parties and the Court finds that the balancing as to those findings clearly show in this case that such an examination is justified, will serve the best interests of both parties, and not pose an undue burden on any party.

The trial court ordered that Dunhill and Greg E. Lindberg "shall make the server or any electronic device housing, hosting, or storing the outlook email account used by the parties available for a forensic examination," limited to the following purposes: (1) whether any emails or text messages between Greg E. Lindberg and Tisha L. Lindberg ever existed, and producing copies of them; (2) whether emails or text messages "dealing with real estate holdings subject to dispute in this lawsuit exist or ever existed, and producing copies of the same for the parties;" and (3) whether any of those messages "if there were any, have been intentionally deleted, and, if deleted, the circumstances of any deletion and whether or not they can be recovered." In its order, the trial court further provided for the protection of arguably privileged communications as follows:

> Out of an abundance of caution, if there is a contention that a document or communication is a communication exclusively between Greg E. Lindberg and an attorney actually representing him,

and the communication does not include any third person for whom the privilege is unavailable, that objection may be renewed provided the specific communication is specifically identified and the basis for the objection and assertion of the privilege is clearly articulated.

*Dunhill I* at \*5–7 (alterations in original).

¶ 10 Dunhill and Mr. Lindberg appealed the June 2018 Order. *Dunhill I* recounts most of the appellate history:

> Dunhill and Greg E. Lindberg filed notice of appeal of the order on 17 July 2018. They also filed a motion for stay with the trial court. Tisha L. Lindberg filed a motion to disregard the notice of appeal and to continue case proceedings with the trial court, along with a response to the motion for stay. The trial court granted Tisha L. Lindberg's motion to disregard notice of appeal and denied Dunhill and Greg E. Lindberg's motion for stay on 24 August 2018. Dunhill and Greg E. Lindberg filed a petition for writ of supersedeas with this Court on 4 September 2018, that was denied in part with certain exceptions on 12 September 2018.

*Dunhill I* at \*7–8.

¶ 11 Following this Court's denial of a petition for writ of supersedeas, Mr. Lindberg and Dunhill filed a Petition for Writ of Supersedeas and Motion for Temporary Stay in the Supreme Court of North Carolina. While that Petition was pending, Ms. Lindberg filed two motions to dismiss the appeal with this Court:

> Tisha L. Lindberg filed a motion to dismiss the appeal on 7 November 2018, arguing the appeal was interlocutory and did not affect a substantial right, and

therefore should be dismissed. Dunhill filed a response to the motion arguing the order did affect a substantial right to private information stored on the servers.

Tisha L. Lindberg subsequently filed a "New Motion to Dismiss Based on Withdrawal of Underlying Appellate Issue" ("second motion to dismiss") on 7 December 2018. In the second motion to dismiss, Tisha L. Lindberg argued the appeal should be dismissed as moot because she entered a "Notice of Withdrawal of Forensic Search Request" with the trial court. Dunhill and Greg E. Lindberg filed a response to Tisha L. Lindberg's motion to dismiss the appeal with this Court arguing the appeal was not moot because the withdrawal did not unilaterally dissolve the challenged portion of the order, because Tisha L. Lindberg remained free to seek further forensic examinations and, alternatively, because several exceptions to the mootness doctrine applied.

*Dunhill I* at \*8.

¶ 12        Prior to this Court ruling on those motions, the Supreme Court issued an order denying Mr. Lindberg's and Dunhill's Petition for Writ of Supersedeas and Motion for Temporary Stay on 5 February 2019.

¶ 13        Dunhill's and Mr. Lindberg's first appeal from the forensic order was addressed in this Court's 7 April 2020 opinion in *Dunhill I*. As discussed above, *Dunhill I* did not resolve the forensic examination issue. *See Dunhill I* at \*12 (referring to this panel the issues in that appeal). The *Dunhill I* court noted issues surrounding whether the appeal before it was interlocutory or moot:

Before we can reach the merits of Dunhill and Greg E. Lindberg's arguments in this appeal, however, we note that Tisha L. Lindberg has filed two motions to dismiss the

> appeal because (1) the appeal is an interlocutory appeal which does not affect a substantial right and (2) the appeal is moot because she has filed a "Notice of Withdrawal of Forensic Search Request" with the trial court, removing the underlying motion to compel discovery. In Tisha L. Lindberg's "Objection and Reply in Opposition to Appellants' 'Supplemental Response to New Motion to Dismiss Appeal,'" she also argues that the trial court's imposition of a final sanctions order on 1 August 2019 moots the present appeal because the discovery order will have no further force or effect.

*Dunhill I* at \*11. Given those concerns and "[i]n the interests of judicial economy and efficiency," this Court in *Dunhill I* "refer[red the forensic examination issue] to the panel of this Court that will decide Dunhill and Greg E. Lindberg's appeals of the discovery order and the sanctions order together." *Dunhill I* at \*12.

¶ 14    The sanctions order to which *Dunhill I* refers was entered after further proceedings in the trial court. Following the Supreme Court's denial of Mr. Lindberg and Dunhill's Petition for Writ of Supersedeas and Motion for Temporary Stay on 5 February 2019, the trial-level proceedings were no longer stayed. As a result, discovery continued with Mr. Lindberg and Dunhill serving Objections and Second Amended Responses to Ms. Lindberg's discovery requests on 11 February 2019. Finding those responses "woefully lacking," Ms. Lindberg filed a Motion to Compel Compliance with the June 2018 Order on 22 February 2019. Specifically, Ms. Lindberg argued Appellants violated the June 2018 Order by:

> 1. Improperly asserting objections that have already been

expressly overruled by the Court;
2. Engaging in an improper "document dump" in a way that makes it impossible to determine which documents have been produced in response to any particular Requests for Production (In fact, Mr. Lindberg and Dunhill have indicated that every page of every document is being produced in response to every Request for Production.);
3. Continuing to withhold documents and not respond to certain discovery requests by Mrs. Lindberg, to which they have been expressly Ordered by the Court to respond without objection; and
4. Continuing to refuse to answer interrogatories and continuing to refuse to verify interrogatory responses.

Ms. Lindberg also raised the specter of Rule of Civil Procedure 37 issues, saying "[t]hese proceedings have now progressed to the point that an appropriate Rule 37 inquiry is necessary by the court to address" Appellants' failures to comply with earlier discovery orders. Appellants filed a response to Ms. Lindberg's Motion to Compel on or around 7 March 2019.

¶ 15        The trial court held a hearing on Ms. Lindberg's Motion to Compel on 11 March 2019. At that hearing, Appellants' counsel admitted they had not fully complied with the June 2018 Order. Specifically, Appellants' counsel said, "We have gone a long way in complying with that [the June 2018 Order]. *I am not arguing that we are there, Judge.*" (Emphasis added). At another point, Appellants' counsel agreed with the trial court that they had not been following the June 2018 Order.

¶ 16        On 26 March 2019, the trial court entered an order granting Ms. Lindberg's Motion to Compel Compliance with Court Order ("March 2019 Order"). The March

2019 Order started by summarizing the June 2018 Order, including a verbatim quote of Appellants' obligations under the June 2018 order. The March 2019 Order then summarized the history of Dunhill's and Mr. Lindberg's appeal from the June 2018 Order and specifically noted the appeal only concerned the issue of the forensic examination ordered therein.

¶ 17        After determining the February 2019 Supreme Court order denying Mr. Lindberg's and Dunhill's petition for Writ of Supersedeas and Motion for Temporary Stay meant "there is no stay over the enforcement" of the June 2018 Order as it relates to document requests and interrogatories, the March 2019 Order proceeded to analyze Appellants' discovery actions. First, the March 2019 Order explained the June 2018 Order required Appellants to respond to the discovery requests without objection and that Appellants had violated the June 2018 Order by improperly reasserting all objections. Then, the March 2019 Order faulted Appellants for failing to organize the 7,000 pages of documents they had produced at that point. The March 2019 Order proceeded to recount all of Appellants' failures to respond to Ms. Lindberg's requests for production and interrogatories in violation of the June 2018 Order. As part of that process, the trial court listed the specific document productions and interrogatories to which Appellants had failed to respond. Relying in part on counsel's admissions at the hearing on the motion to compel included above, the March 2019 Order found Appellants were in violation of the June 2018 Order for the

reasons already discussed.

The trial court then concluded, in the March 2019 Order, that Appellants had violated the June 2018 Order and laid out its Rule of Civil Procedure 37(b)(2), N.C. Gen. Stat. § 1A-1, Rule 37(b)(2), authority for actions it could take to compel compliance. The trial court ordered that by 26 March 2019 Appellants had to "answer fully and completely, and without objection" all of Ms. Lindberg's interrogatories and "produce all documents that are being withheld from the document requests identified above." The March 2019 Order further required Appellants to "specifically identify which Request for Production" all of their documents corresponded to, whether the documents were produced before or after the Order. Finally, the March 2019 Order awarded attorney's fees to Ms. Lindberg.

Pursuant to the March 2019 Order, Appellants produced additional documents on 26 March 2019. They also organized the documents based upon the discovery requests to which they were responsive.

As discovery proceeded, Ms. Lindberg noticed a deposition for Dunhill, via Rule of Civil Procedure 30(b)(6), for early May 2019. Dunhill and Mr. Lindberg sought a protective order against the Rule 30(b)(6) deposition in mid-April 2019. Pending a hearing on the protective order, Ms. Lindberg re-noticed the Rule 30(b)(6) deposition to early June 2019. After a hearing on the motion, the trial court entered an order denying the protective order because it concluded "in its discretion, that each

deposition topic at issue is proper . . . ." The court's order then required Dunhill to appear for the noticed deposition "and be prepared to testify, through an appropriate company designee, as to all 'matters known or reasonably available to' Dunhill regarding each topic in the notice of deposition." (Quoting N.C. Gen. Stat. § 1A-1, Rule 30(b)(6)).

¶ 21 On the same day that Appellants sought a protective order for Dunhill's deposition, Mr. Lindberg filed a motion for a temporary stay of proceedings until federal criminal charges against him were resolved. On the same day as the trial court denied Dunhill's motion for a protective order, it also issued an order denying Mr. Lindberg's motion for a temporary stay. The trial court found that "none of the claims, counterclaims, or causes of action" in the current case were connected to the then-pending criminal proceedings against Mr. Lindberg. Concurrently, the trial court found neither Mr. Lindberg nor Dunhill would be prejudiced by its order and said Mr. Lindberg could assert, in this suit, his Fifth Amendment privilege against self-incrimination if he believed it was in his best interest. To further protect Mr. Lindberg, the trial court ordered Ms. Lindberg's counsel "shall not be allowed to question Mr. Lindberg at his upcoming deposition in this action regarding the facts contained in the Bill of Indictment . . . ." The trial court's order denying Appellants' motion for a protective order also made it clear that because it was denying Mr. Lindberg's motion for a stay, the trial court would not entertain the issues in the stay

as a basis for granting the protective order.

¶ 22        Based upon those orders, the next discovery proceeding was Dunhill's Rule 30(b)(6) deposition. Days before that deposition, Dunhill and Mr. Lindberg produced another 129,000 pages of documents. At the deposition, Dunhill's designated corporate representatives were "completely unprepared" to address many of the designated topics according to the trial court's later unchallenged Findings of Fact. The document production and deposition led Ms. Lindberg to file a motion, which was subsequently corrected, for sanctions under Rule 37(b). After summarizing the history of the dispute, Ms. Lindberg argued Dunhill's and Mr. Lindberg's actions in producing 129,000 pages of documents mere days before the deposition as well as Dunhill's failure to present prepared designees for its deposition justified sanctions. As a result of that misconduct, Ms. Lindberg requested as sanctions, specifically: that certain facts be established in the action; that Dunhill be barred from supporting its claims; that Dunhill's designees be required to sit again for depositions and fully answer on the noticed topics; and "any further relief [the court] deems just and proper pursuant to Rule 37(b) for violating this Court's prior discovery orders." Dunhill later filed a verified response to Ms. Lindberg's corrected motion for sanctions.

¶ 23        While that motion for sanctions was pending, Ms. Lindberg deposed Mr. Lindberg. Mr. Lindberg, according to unchallenged Findings of Fact made later by the trial court, committed numerous forms of misconduct at his deposition including:

repeatedly refusing to answer questions by saying he could not comment; repeatedly refusing to review or answer questions about documents, even ones he or Dunhill produced; making personal attacks on Ms. Lindberg's counsel; extreme time wasting; and improperly asserting attorney-client privilege when there was clearly no communication between lawyer and client. As a result of the deposition, Ms. Lindberg filed, under seal, a supplemental motion for sanctions under Rules 37(a), 37(b), and 41(b). After laying out the facts and law supporting sanctions, Ms. Lindberg requested as sanctions that: all pleadings by Mr. Lindberg and by Dunhill be stricken; all claims asserted by Dunhill be dismissed with prejudice; Ms. Lindberg be allowed to conduct all discovery relevant to her counterclaims; the attorney-client objections asserted at Mr. Lindberg's deposition be overruled; Mr. Lindberg be required to sit for another deposition and answer, without objection, all questions posed that are relevant to Ms. Lindberg's counterclaims and damages claims; neither Mr. Lindberg nor Dunhill be allowed to use any documents in their 129,000 page production on the eve of Dunhill's deposition; and the trial court grant any further relief it deems just and proper under Rule 37(b) for violating the court's prior discovery orders.

¶ 24    The trial court held a hearing on the motions for sanctions on 15 July 2019. At the hearing, Appellants delineated where the 129,000 pages they produced on the eve of Dunhill's deposition came from as they tried to argue the documents were

supplemental rather than a violation of past discovery orders. Specifically 100,000 pages were bank and credit card statements and the remaining were emails from individuals who worked at Dunhill during the relevant time period. The hearing led to an order granting Ms. Lindberg's motions for sanctions on 1 August 2019 ("August 2019 Order").

The August 2019 Order started by summarizing the procedural history and background of the case as we have already laid out. Characterizing the 129,000 page document production on the eve of Dunhill's deposition as a "document dump," the August 2019 Order laid out how the production violated the March 2019 Order because that order had "unequivocally required Dunhill and Mr. Lindberg to produce <u>all</u> discovery materials in its possession by no later than the March 26, 2019 deadline." (Emphasis in original.) The August 2019 Order also recounted "Dunhill's failure to present prepared witnesses for [its] 30(b)(6) deposition in violation of th[e] court's order." (Capitalization altered). Specifically, the August 2019 Order detailed how Dunhill's designees were completely unprepared—and in some cases had not even inquired to try to prepare—to address certain noticed topics including: electronic devices used by Mr. Lindberg at the relevant times; the location of servers that housed relevant emails; and the factual bases for Dunhill's allegations against Ms. Lindberg. Dunhill's designees further quibbled with the meanings of ordinary words in English and indicated Ms. Lindberg's attorneys should find answers by

"search[ing] through vague categories of documents" while intentionally not identifying any specific documents. The trial court also made extensive Findings of Fact about the "multiple forms of intentional obstruction and delay repeatedly employed by Greg Lindberg at his deposition," as summarized above. (Capitalization altered.)

¶ 26 After those Findings, the August 2019 Order explained how Dunhill and Mr. Lindberg had jointly violated the court's prior orders and worked together to "intentionally evade" discovery obligations. After summarizing all those factual bases for potential sanctions, the August 2019 Order included a section entitled "Consideration of Lesser Sanctions" where the trial court recounted how it had considered lesser sanctions, including requiring Appellants to sit for new depositions, but did not think they would deter Appellants from continuing to evade discovery obligations and violate discovery orders.

¶ 27 The August 2019 Order then included pertinent Conclusions of Law. First, the trial court laid out its Conclusions regarding sanctions for Dunhill's and Mr. Lindberg's 129,000 page "document dump" and Dunhill's deposition. (Capitalization altered.) The trial court then justified its sanctions for Mr. Lindberg's deposition misconduct under Rules of Civil Procedure 37(b) and 41(b). The trial court concluded the discussion of sanctions for Mr. Lindberg's deposition misconduct by again justifying harsh sanctions here and, further, overruled all of Mr. Lindberg's

assertions of attorney-client privilege from his deposition.

¶ 28        Finally, the August 2019 Order granted both of Ms. Lindberg's motions for sanctions. As sanctions, the trial court first struck all pleadings from Mr. Lindberg and Dunhill. The trial court then ruled in favor of Ms. Lindberg on all liability issues by dismissing Dunhill's claims with prejudice and granting default judgment against Dunhill and Mr. Lindberg on all of Ms. Lindberg's claims; it reserved the issue of damages for trial. To support those sanctions, the trial court barred Dunhill and Mr. Lindberg from opposing any liability issues at trial and designated certain facts be established in Ms. Lindberg's favor. The trial court further allowed Ms. Lindberg to proceed with all discovery relevant to the issue of damages. As part of that process, the trial court allowed Ms. Lindberg to depose Dunhill on "all previously-noticed topics." (Emphasis in original.) The trial court also permitted Ms. Lindberg to depose Mr. Lindberg again and required him "to answer, without objection, all questions posed by Mrs. Lindberg's counsel that are relevant to any of her counterclaims or damages claims," although the trial court confirmed all Mr. Lindberg's previous attorney-client privilege objections had been overruled. Lastly, the August 2019 Order sanctioned Appellants by barring them from using any documents in the 129,000 page production and awarding Ms. Lindberg attorney's fees. Dunhill and Mr. Lindberg both filed written notices of appeal, which they then amended.

## II.  Grounds for Appellate Review

¶ 29          Appellants provide a "Statement of the Grounds for Appellate Review," as provided for in North Carolina Rule of Appellate Procedure 28(b)(4) and argue the sanctions issues are interlocutory but that discovery orders imposing sanctions impact a substantial right and are thus immediately appealable.  (Capitalization altered.) We agree that the sanctions orders are immediately appealable, although for slightly different reasons.  While Appellants rely on statutes allowing appeals from interlocutory orders that "[a]ffect[] a substantial right," N.C. Gen. Stat. § 7A-27(a) (2021); *see also* N.C. Gen. Stat. § 1-277 (2021), "an order imposing sanctions under Rule 37(b) is appealable as a final judgment."[5]  *Batesville Casket Co., Inc. v. Wings Aviation, Inc.*, 214 N.C. App. 447, 457, 716 S.E.2d 13, 20 (2011) (quoting *Smitheman v. Nat'l Presto Indus.*, 109 N.C. App. 636, 640, 428 S.E.2d 465, 468 (1993)); *see also Walker v. Liberty Mut. Ins. Co.*, 84 N.C. App. 552, 554–55, 353 S.E.2d

---

[5] Appellants' position—i.e. that sanctions affect a substantial right and are therefore immediately appealable despite being interlocutory—also finds support in certain cases from this Court.  *See, e.g.*, *Feeassco, LLC v. Steel Network, Inc.*, 264 N.C. App. 327, 331, 826 S.E.2d 202, 206–07 (2019) ("[W]hen a discovery order is enforced by sanctions pursuant to N.C. Gen. Stat. § 1A-1, Rule 37(b), the order affects a substantial right and is immediately appealable." (citing *In re Pedestrian Walkway Failure*, 173 N.C. App. 254, 262, 618 S.E.2d 796, 802 (2005))).  We believe an order imposing sanctions is best described as a final judgment, but ultimately this difference does not impact the case at hand because either route allows for an immediate appeal of the sanctions order.  *See* Alan D. Woodlief, Jr., *Statutory exceptions to the finality requirement, generally*, 1 Shuford N.C. Civil Prac. And Pro. With Appellate Advocacy § 86:5 (6th ed. 2020) ("Since the statutory provisions discussed above [N.C. Gen. Stat. §§ 7A-27(d) and 1-277] allow certain interlocutory orders to be appealed immediately, for their purposes the distinction between final and interim orders is less significant.").

425, 426 (1987) ("[W]hen the order is enforced by sanctions pursuant to N.C.R. Civ.P., Rule 37(b), the order is appealable as a final judgment."); *Ross v. Ross*, 215 N.C. App. 546, 547, 715 S.E.2d 859, 861 (2011) (citing *Walker* in support of proposition that an order compelling discovery is not a final judgment and does not affect a substantial right and therefore is not immediately appealable, unless it imposes sanctions).

¶ 30      Here, the trial court sanctioned both parties under Rule 37(b). Therefore, the sanctions order is "appealable as a final judgment." *Batesville Casket Co.*, 214 N.C. App. at 457, 716 S.E.2d at 20.[6]

¶ 31      To the extent Appellants present arguments concerning the underlying discovery orders on which the sanctions are based, *see* N.C. R. App. P. 28(a) ("Issues not presented and discussed in a party's brief are deemed abandoned."), "the appeal tests the validity of both the discovery order and the sanctions imposed." *In re Pedestrian Walkway Failure*, 173 N.C. App. at 262, 618 S.E.2d at 802. With one exception, Appellants' arguments only challenge the sanctions imposed, not the validity of the underlying discovery orders. As for the exception, Appellants both incorporate the argument from their prior appeal that, in the words of Appellants, focused on the June 2018 Order's ruling requiring a "forensic examination of all

---

[6] Our determination that the August 2019 Order was a final judgment aligns with *Dunhill I's* description of this appeal as one in which "each party appeals not only the *final judgment* of the trial court imposing sanctions, but also again specifically appeals the discovery order at issue in the present [first] appeal." *Dunhill I* at *11 (emphasis added).

electronic devices that might have relevant information," regardless of party ownership. Therefore, we also review the June 2018 Order's section on the forensic examination of electronic devices as argued in Appellants' previous appeal.

¶ 32        Notably, even if we could not reach that argument under *In re Pedestrian Walkway Failure*, we would still address Appellants' arguments in their prior appeal due to the law of the case. Specifically, the *Dunhill I* Court "refer[red the forensic examination issue] to the panel of this Court that will decide Dunhill and Greg E. Lindberg's appeals of the discovery order and the sanctions order together." *Dunhill I* at \*12. As that panel, we are bound by the law of the case to consider Dunhill's and Greg Lindberg's prior appeal as well. *See North Carolina Nat. Bank*, 307 N.C. at 567, 299 S.E.2d at 631–32 (explaining how law-of-the-case doctrine requires a subsequent Court of Appeals panel to follow the decisions of a previous panel in a given case).

### III.        Standard of Review

¶ 33        Because all the issues between the parties are discovery issues and sanctions stemming therefrom, the same standard of review applies throughout our analysis.

¶ 34        As this Court has previously explained:

> As a general rule, we review the trial court's rulings regarding discovery for abuse of discretion. [Citation] "An abuse of discretion is a decision manifestly unsupported by reason or one so arbitrary that it could not have been the result of a reasoned decision." *Briley v. Farabow*, 348 N.C. 537, 547, 501 S.E.2d 649, 656 (1998). However, if the trial court makes a discretionary ruling based upon a

misapprehension of the applicable law, this is also an abuse of discretion. *See State v. Rhodes*, 366 N.C. 532, 536, 743 S.E.2d 37, 39 (2013) ("[A]n abuse-of-discretion standard does not mean a mistake of law is beyond appellate correction. A [trial] court by definition abuses its discretion when it makes an error of law." (alterations in original) (quoting *Koon v. United States*, 518 U.S. 81, 100, 116 S. Ct. 2035, 2047), 135 L.Ed.2d 392 (1996))). And if the trial court's ruling depends upon interpretation of a statute, we review the ruling *de novo. Moore v. Proper*, 366 N.C. 25, 30, 726 S.E.2d 812, 817 (2012) ("[W]hen a trial court's determination relies on statutory interpretation, our review is de novo because those matters of statutory interpretation necessarily present questions of law.").

*Myers v. Myers*, 269 N.C. App. 237, 240–41, 837 S.E.2d 443, 447–48 (2020) (citation omitted as indicated; all other alterations in original).

¶ 35        The same abuse-of-discretion standard applies in the context of sanctions. *See Feeassco*, 264 N.C. App. at 337, 826 S.E.2d at 210 ("According to well-established North Carolina law, a broad discretion must be given to the trial judge with regard to sanctions.") (quoting *Batlle v. Sabates*, 198 N.C. App. 407, 417, 681 S.E.2d 788, 795 (2009)). Applying that standard in the sanctions context specifically, "[a] trial court does not abuse its discretion by imposing a severe sanction so long as that sanction is among those expressly authorized by statute and there is no specific evidence of injustice." *Id.* (quotation marks and citation omitted). While trial courts "must consider the appropriateness of less severe sanctions" before "imposing a severe sanction," *id.*, the ultimate choice of sanctions is still within their discretion. *See In*

*re Pedestrian Walkway Failure*, 173 N.C. App. at 247, 618 S.E.2d at 826 ("[T]he choice of sanctions under Rule 37 is within the trial court's discretion . . . ." (citation and quotations omitted)).

¶ 36        In reviewing the trial court's order under the abuse of discretion standard, any unchallenged findings of fact are binding on appeal. *Feeassco*, 264 N.C. App. at 340, 826 S.E.2d at 211 (citing *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) ("Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal.")). Any challenged findings of fact "are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting." *Baker v. Rosner*, 197 N.C. App. 604, 608, 677 S.E.2d 887, 890 (2009) (quoting *State v. Haislip*, 362 N.C. 499, 500, 666 S.E.2d 757, 758 (2008)). We review each of Appellants' arguments under an abuse of discretion standard.

## IV.    Sanctions for Document Productions

¶ 37        Both Appellants argue the court erred in sanctioning them for their document productions. After setting out law requiring a "predicate violation" of a prior court order to compel discovery, Appellants contend "the fundamental problem with these orders [the sanctions order on appeal] is that there was no predicate violation of a court order." Specifically, Appellants argue "the March 2019 Order failed to identify any violation of the June 2018 Order," and that the August 2019 Order failed to show

a violation of the March 2019 Order. Within each of those arguments, Appellants take issue with certain Findings of Fact in the March and August 2019 Orders and detail why no predicate orders existed. After reviewing the relevant law, we address the alleged issues with the March 2019 and August 2019 Orders in turn.

¶ 38 North Carolina Rule of Civil Procedure 37(b)(2) authorizes "sanctions by [a] court in which action is pending" when a party or certain representatives of a party, *inter alia*, "fail[] to obey an order to provide or permit discovery." N.C. Gen. Stat. § 1A-1, Rule 37(b)(2) (2021) (capitalization altered). The statute authorizes sanctions "as are just" and explicitly allows, as relevant here:

> a. An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;
> b. An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting the party from introducing designated matters in evidence;
> c. An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

N.C. Gen. Stat. § 1A-1, Rule 37(b)(2)(a)–(c).

¶ 39 "Generally sanctions under Rule 37 are imposed only for the failure to comply with a court order." *Myers*, 269 N.C. App. at 252, 837 S.E.2d at 454 (quoting *Pugh v. Pugh*, 113 N.C. App. 375, 379, 438 S.E.2d 214, 217 (1994)). Thus, "a party seeking

sanctions must first demonstrate a violation of a substantive rule of discovery, based upon Rules 26 through 36, obtain a court order to compel discovery, and *then* Rule 37 sanctions may be imposed." *Id.* (emphasis in original; footnote omitted). This requirement for a violation of a court order compelling discovery is what Appellants term as a requirement for a "predicate violation." Because a sanctions order requires an underlying violation of a court order compelling discovery, the trial court abuses its discretion "if there is no record evidence which indicates that [a party] acted improperly, or if the law will not support the conclusion that a discovery violation has occurred." *Baker*, 197 N.C. App. at 607, 677 S.E.2d at 890 (quotation and citation omitted).

¶ 40        Here, the parties' dispute does not center on the law requiring an underlying order compelling discovery and a violation of that order. We review the specifics of each of those arguments.

**A. March 2019 Order Finding Violations of June 2018 Order**

¶ 41        Appellants' argue "[t]here was no violation of the June 2018 Order" and thus the March 2019 Order erred in awarding sanctions under Rule 37(b). Their parallel arguments begin by asserting the March 2019 Order never addressed the key question of "which documents and where designated." (Citing *Willis v. Duke Power Co.*, 291 N.C. 19, 31, 229 S.E.2d 191, 198 (1976)). Then, Appellants contend, "[r]ather than answering that question, in the March 2019 Order the trial court created new

requirements and obligations not found in the June 2018 Order." Each Appellant then alleges "there is no evidence to support" certain, listed Findings of Fact from the March 2019 Order. We address Appellants' argument that the trial court did not answer the question of which documents and where designated before turning to their arguments about the challenged Findings of Fact.

¶ 42        Appellants' argument that the trial court did not answer the question of which documents and where designated is misplaced because that question had already been answered. Appellants rely on *Willis v. Duke Power Co.* Appellants' quote from *Willis v. Duke Power Co.* is taken out of context, as the language immediately after the quote on which Appellants rely shows that case is distinguishable. The predicate order in that case required "the defendant to answer the plaintiff's interrogatories and to produce 'the documents therein designated . . . .' The question is which documents and where designated. *At the time of this order no documents had been identified or designated by either party.*" *Willis*, 291 N.C. at 31, 229 S.E.2d at 198–99.

¶ 43        Here, the June 2018 Order required Dunhill and Mr. Lindberg to "fully and completely reply to *each and every* Interrogatory and discovery request for production of documents" with exceptions not relevant here. (Emphasis added.) The June 2018 Order also specifically "fully incorporated herein by reference" the "requests for discovery" that Ms. Lindberg had filed on 26 February 2018. Thus, unlike in *Willis*,

291 N.C. at 31, 229 S.E.2d at 198–99, Ms. Lindberg had designated documents in her discovery requests from February 2018 and the trial court indicated *those* documents were the ones Appellants needed to provide to comply with the June 2018 Order. The trial court highlighted that part of the June 2018 Order again for Appellants in its March 2019 Order by specifically reproducing the documents designated. Therefore, the March 2019 Order highlighted the part of the June 2018 Order that answered the very question Appellants now claim the March 2019 Order failed to answer.

¶ 44        Turning to the challenged Findings of Fact from the March 2019 Order, Appellants' arguments fit into three categories: (1) the June 2018 Order did not require them to respond to Tisha Lindberg's requests without objection (challenges to Findings of Fact 18, 19, 22, 28, 31, 32, 34, 37, 38, 42, 43); (2) the June 2018 Order did not require production of documents in a manner that indicated to which discovery request they responded (challenges to Findings of Fact 24, 25); (3) other topics that are not properly argued before us (challenges to Findings of Fact 7, 17, 28, 29, 33, 35, 39, 48).

¶ 45        Taking the categories in order, Appellants first argue the June 2018 Order did not require them to respond to Ms. Lindberg's requests without objection and thus it was an error for the March 2019 Order to find the June 2018 Order did just that. While the June 2018 Order did not specifically state Appellants had to respond to Ms. Lindberg's requests "without objection," the June 2018 Order in its entirety supports

this reading. First, the June 2018 Order addressed the specific objections Appellants had raised and then overruled nearly all of them concluding they lacked merit—other than attorney-client privilege, which we address below—and determining they "were interposed for an improper purpose of delay and avoiding any meaningful response." In the June 2018 Order, the trial court had already ruled upon the particular objections Appellants attempted to raise again. This argument, like Appellants repeated attempts to raise the same objections again after the trial court had already rejected them, is without merit.

¶ 46       Further, the June 2018 Order provided a specific procedure for Appellants to renew objections based on a claim of attorney-client privilege. A common canon of statutory construction says "when a statute lists the situations to which it applies, it implies the exclusion of situations not contained in the list." *E.g. Cooper v. Berger*, 371 N.C. 799, 810, 822 S.E.2d 286, 296 (2018) (quotations and citations omitted). Applying similar logic here, by listing that Appellants could renew objections based on a claim of attorney-client privilege, the June 2018 Order implied Appellants could not renew their other objections. Under the June 2018 Order, Appellants were supposed to respond to the outstanding discovery requests without raising the same objections the trial court had already rejected, so the trial court did not abuse its discretion in the March 2019 Order by finding Appellants violated the June 2018 Order for reasserting overruled objections.

¶ 47        Appellants also argue they could have reasserted their previously overruled objections because "failure to reassert the objections could be construed as waiver." Both cases upon which Appellants rely involve rules and situations where waiver might follow when a party failed to properly object even once. *See Adams v. Lovette*, 105 N.C. App. 23, 28–29, 411 S.E.2d 620, 623–24 (1992) (laying out rule for implied waiver on an issue where defendant had never stated an objection on the ground argued on appeal); *Golding v. Taylor*, 19 N.C. App. 245, 246, 248, 198 S.E.2d 478, 479–80 (1973) (stating that there is ordinarily a rule that a failure to object to interrogatories within a fixed time constitutes waiver before explaining the party had objected at the first time of asking but just not within the appropriate timeframe). Thus, those cases provide no support for a party needing to reassert meritless objections a second time. Further, Rule of Appellate Procedure 10(a) only requires a party to assert its objection and obtain a ruling from the trial court in order to preserve the issue. Therefore, we reject Appellants' argument that they would have waived their objections to Ms. Lindberg's discovery requests if they failed to reassert them after the June 2018 Order denied nearly all of them.

¶ 48        Turning to the next category, Appellants assert the March 2019 Order erred when it "stated that it was 'improper and in violation of' the June 2018 Order to produce documents without indicating to which particular discovery requests the documents responded." While the June 2018 Order does not specifically say

Appellants must indicate to which particular discovery requests the documents respond, reading the Order in its entirety once again supports that requirement. The June 2018 Order mandated Appellants "fully and completely reply to *each and every* Interrogatory and discovery request for production of documents" with one exception not relevant here. (Emphasis added.) The March 2019 Order explicitly quoted that language when summarizing the June 2018 Order. Given that language, we cannot say the March 2019 Order's determination that the June 2018 Order required Appellants to indicate which particular discovery request documents responded to was "manifestly unsupported by reason" or "so arbitrary that it could not have been the result of a reasoned decision." *Myers*, 269 N.C. App. at 240, 837 S.E.2d at 447–48. Therefore, the trial court did not abuse its discretion by finding it was a violation of the June 2018 Order to produce documents without indicating to which request they responded.

¶ 49          Appellants also argue Rule of Civil Procedure 34(b)(1) allows parties to produce documents as they are kept in the usual course of business rather than labeling them in response to a particular document request. Appellants omit the prefatory clause of the rule. The full sentence reads:

> *Unless otherwise stipulated by the parties or ordered by the court*, the following procedures apply to producing documents or electronically stored information:
>
> (1) A party must produce documents as they are kept

> in the usual course of business or must organize and
> label them to correspond to the categories in the
> request;

N.C. Gen. Stat. § 1A-1, Rule 34(b)(2021) (emphasis added). Appellants may have originally had the choice to produce documents in the ordinary course of business, but the June 2018 Order removed that choice by requiring them to label the documents by request.

¶ 50 Turning to the final category, Appellants list many other Findings of Fact they claim "there is no evidence to support" without making any further argument. North Carolina Rule of Appellate Procedure 28(a) requires parties to present and discuss issues or they are deemed abandoned. N.C. R. App. P. 28(a); *see also* N.C. R. App. P. 28(b)(6) (requiring a party to support issues by reason or argument). Failure to follow Rule 28 makes it "difficult if not impossible to properly determine the appeal." *Steingress v. Steingress*, 350 N.C. 64, 66, 511 S.E.2d 298, 299 (1999). Furthermore, "[i]t is not the duty of this Court to peruse through the record, constructing an argument for appellant." *Person Earth Movers, Inc. v. Thomas*, 182 N.C. App. 329, 333, 641 S.E.2d 751, 754 (2007).

¶ 51 Here, Appellants abandon any argument of the remaining Findings of Fact they challenge, and it is not our duty to "peruse through the record" to construct their argument for them. *Id.* For example, both Appellants challenge Finding of Fact 48 awarding attorney's fees and making eight specific sub-Findings of Fact, some of

which span multiple sentences. Despite that listed challenge, neither Appellant further mentions in their argument the two pages of the record Finding 48 covers, apparently leaving for this Court to determine the specific portions of the Finding Appellants challenge.

¶ 52 As another example, Appellants challenge Findings of Fact 27 and 33, each of which lists approximately twenty five requests for document production Appellants still had not responded to in violation of the June 2018 Order. Appellants provide no evidence or record citations to support their compliance with those requests. It is not our duty to search the 7,000 pages of documents Appellants produced between the June 2018 and March 2019 Orders—which also do not appear to be in the record—to determine Appellants' compliance with those requests. *Person Earth Movers*, 182 N.C. App. at 333, 641 S.E.2d at 754. Because Appellants have failed to present an argument as to these remaining challenged Findings of Fact, we deem those challenges abandoned. N.C. R. App. P. 28(a), (b)(6).

¶ 53 Finally, Appellants argue the March 2019 Order "failed to even acknowledge that [Appellants] had appealed from the June 2018 Order" and "effectively sought to punish [Appellants] for obtaining stay relief from the appellate courts" because Appellants "promptly served the responses and produced the documents required by the June 2018 Order" once the stay was denied. We cannot reconcile this argument with the record before us. The March 2019 Order acknowledged the initial appeal

from the June 2018 Order and the history of that appeal in multiple unchallenged Findings of Fact. The March 2019 Order then specifically found in unchallenged Finding of Fact 15: "As a result of the Supreme Court's February 5, 2019 Order, this matter is not stayed in any way and proceedings at the trial court level must move forward." Thus, contrary to Appellants' argument, the March 2019 Order acknowledged their appeals and the stays involved.

¶ 54      The record also does not support Appellants' argument that they complied with the June 2018 Order once the stay was denied. At the 11 March 2019 hearing that led to the March 2019 Order, Appellants' counsel admitted they had not fully complied with the June 2018 Order. At one point, Appellants' counsel said, "We have gone a long way in complying with that [June 2018 Order]. *I am not arguing that we are there, Judge.*" (Emphasis added.) At another point, the following exchange occurred:

> THE COURT: . . . what is before me is you now have an order, after all of this, that Judge Smith entered on June 27th of 2018 that's not being followed.
> MR. PACE [Appellants' counsel]: You're exact – *you're correct*. We agree 100 percent it is time to comply with the order.

(Emphasis added.) Thus**,** a month and six days after the final stay was denied, Appellants still admitted they were not in compliance. Notably, this was roughly the same amount of time the June 2018 Order originally gave them to comply.

Reviewing for abuse of discretion, we reject all of Appellants' arguments that the March 2019 Order improperly found violations of the June 2018 Order. The parties must comply with the order actually entered, regardless of what a party *wishes* the order had required. *See Becker v. Pierce*, 168 N.C. App. 671, 678–79, 608 S.E.2d 825, 830 (2005) (finding no error when defendant produced three letters as required by the previous court order but did not produce a fourth that plaintiffs claimed was covered). What Appellants *wish* the June 2018 Order required is not relevant. What matters is the June 2018 Order *actually identified* the documents to be produced, ordered Appellants to respond without objection, and required Appellants to indicate to which discovery request each document responded. The March 2019 Order further properly took into account Appellants' appeal from the June 2018 Order. Therefore, the trial court did not abuse its discretion by finding, in the March 2019 Order, that Appellants violated the June 2018 Order.

**B. August 2019 Order Finding Violations of the March 2019 Order**

Similar to their first argument, Appellants contend "[t]here was no violation of the March 2019 Order" and thus the August 2019 Order erred in awarding sanctions under Rule 37(b). As with the previous argument, Appellants challenge listed Findings of Fact and then have arguments, some of which are unconnected to the challenged Findings. We first address the challenges to the Findings before turning to the unconnected arguments.

¶ 57        Appellants both challenge the same Findings of Fact in the August 2019 Order. As with their previous argument, Appellants list certain Findings of Fact that they claim "there is no evidence to support" without making any further argument (Findings 10, 22, 101, 110). Because Appellants have failed to present an argument as to these challenged Findings of Fact, we again deem those challenges abandoned. N.C. R. App. P. 28(a), (b)(6).

¶ 58        The next Finding of Fact Appellants challenge (Finding 21) summarizes the ways in which Appellants, after the final stay was lifted in February 2019, "continued purposefully to withhold discovery and violate the Court's June 27, 2018 Discovery Order . . . ." Of the listed violations in that Finding, Appellants only specifically argue "there was no prohibition against reasserting objections," so we only address that argument. *See* N.C. R. App. P. 28(a), (b)(6) (deeming challenges to be abandoned if not specifically argued). We have already determined above that the June 2018 Order prohibited Appellants from reasserting their objections, and we reject this challenge for the same reason.

¶ 59        The final challenged Finding of Fact (Finding 32) determined Appellants violated the March 2019 Order through their 129,000 page document production in May 2019 because that was after the March 2019 Order's deadline "to produce <u>all</u> discovery materials" in Appellants' possession. (Emphasis in original.) Appellants argue the March 2019 Order did not require producing all discovery materials but

rather all documents that were being withheld, which Appellants argue they did. Appellants then argue this later production permissibly supplemented their earlier production with "documents [that] were received from third parties and computer servers . . . ." This supplementation argument therefore also contends none of the documents in the 129,000 page production from May 2019 were documents that had previously been withheld.

¶ 60    The record here cannot support Appellants' argument. The March 2019 Order listed numerous requests for document production with which Appellants entirely failed to comply. The March 2019 Order then required Appellants to "produce all documents that are being withheld from the document requests identified above." Thus, the term withholding referred to all documents Appellants had related to those discovery requests.

¶ 61    Despite the fact that Appellants had to provide all documents related to those requests by the 26 March 2019 deadline set in the March 2019 Order, they failed to comply. Instead, Appellants had still not complied by May 2019 because the May 2019 production included many documents responsive to those requests. While we do not have the entire batch of discovery documents before us, Appellants' own admission that these documents were responsive to prior requests puts them in violation of the March 2019 Order, unless all of the documents produced were supplemental.

¶ 62        The record here belies Appellants' contention that all 129,000 pages produced in May 2019 were supplemental.  At the July 2019 hearing on Ms. Lindberg's motion for sanctions, Appellants' counsel identified the sources of the 129,000 pages.  About a quarter of the documents (29,000 pages) were emails from the accounts of individuals who worked at Dunhill during the relevant time period.  Rule of Civil Procedure 34(a) allows a party to obtain production of documents "which are in the possession, custody or control of the party upon whom the request is served."  N.C. Gen. Stat. §1A-1, Rule 34(a).  Dunhill clearly had possession, custody, or control over the email accounts of its own employees.  Thus, the 29,000 pages of emails cannot all be supplemental.

¶ 63        The remaining 100,000 pages were bank and credit card statements, of which we presume at least some were for accounts held by either Dunhill or Mr. Lindberg given the underlying requests focused on those accounts.  Appellants do not show these documents were all supplemental.  As the terms are used in Rule of Civil Procedure 34(a), "possession, custody, or control of the party" includes documents a party has "the legal right to obtain . . . on demand."  *See Pugh*, 113 N.C. App. at 380, 438 S.E.2d at 218 (describing that test as the federal standard then applying it in the case at hand) (quotations and citation omitted).

¶ 64        Dunhill and Mr. Lindberg certainly had the legal right to obtain on demand their own bank and credit card statements.  Therefore, they had possession, custody,

or control of at least some of those 100,000 pages of records before the March 2019 Order's deadline. To characterize all 129,000 pages in the May 2019 production as supplemental per Appellants' arguments the August 2019 Order faulted them for supplementing their production is incredulous. The trial court did not abuse its discretion in finding, in the August 2019 Order, that the 129,000 page production in May 2019 violated the March 2019 Order.

¶ 65        Finally, Appellants argue they "[a]t the very least . . . made good faith efforts to comply with the trial court's orders," and therefore they should not have been sanctioned. Appellants are correct that Rule 37 requires "a good faith effort at compliance with the court order." *Laing v. Liberty Loan Co. of Smithfield and Albemarle*, 46 N.C. App. 67, 71, 264 S.E.2d 381, 384 (1980). While a party's willful violation of a court order will defeat a finding of good faith, *see Willis*, 291 N.C. at 32–33, 229 S.E.2d at 199 (finding defendant acted in good faith and that there was no evidence of a willful refusal), North Carolina law does not require a party to have willfully violated a court order to justify an award of Rule 37 sanctions. *Henderson v. Wachovia Bank of North Carolina, N.A.*, 145 N.C. App. 621, 629, 551 S.E.2d 464, 470 (2001) ("[T]he plain language of Rule 37 does not require a showing of willfullness. The order of default judgment may be entered against a defendant pursuant to Rule 37(b)(2) for failure to obey a court order whether the failure was willful or not."); *see also* N.C. Gen. Stat. § 1A-1, Rule 37, Comment to the 1975

Amendment (recounting how shift of language to "failure" from "refusal" aimed to make clear that courts do not have to find a willful failure to impose sanctions). Rather, the good faith standard eliminates the threat of sanctions "[i]f a party's failure to produce is shown to be due to inability fostered neither by its own conduct nor by circumstances within its control . . . ." *Laing*, 46 N.C. App. at 71, 264 S.E.2d at 384.

¶ 66 Here, Appellants' failures to comply with the March 2019 Order were due to their own conduct and circumstances within their control. Considering the entire history of this discovery dispute, the multiple orders addressing Appellants' objections and late and deficient responses, as well as Dunhill's and Mr. Lindberg's deposition testimony, Appellants have not shown good faith in Appellants' responses to the discovery requests. As explained above, Appellants had in their possession, control, or custody or had the legal right to demand all the documents they admitted were part of the May 2019 production. Therefore, Appellants did not act with good faith and were subject to Rule 37 sanctions.

¶ 67 We find the trial court did not abuse its discretion in ruling, in its August 2019 Order, Appellants violated the March 2019 Order. Combined with our previous conclusion about violations of the June 2018 Order, we hold the trial court did not abuse its discretion in sanctioning Appellants for their document production actions and inactions.

## V.     Sanctions for Depositions

¶ 68        In addition to arguing they should not have been sanctioned for their actions and inactions around document production, both Appellants assert the trial court erred in sanctioning them for their depositions.  Similar to the document production issue, Appellants both argue "without a predicate order in place, the sanctions" based on their depositions "were inappropriate."  Dunhill then presents an additional argument that the trial court "misconstrued Rule 30(b)(6)," the basis for its deposition.  We first address the predicate order issue for each Appellant before turning to Dunhill's argument about Rule 30(b)(6).

### A. Predicate Order Issue

¶ 69        Both Appellants argue the trial court erred by sanctioning them for their depositions "without a predicate order in place."  This argument closely resembles the contentions Appellants had regarding document productions.

¶ 70        Given the similarities in the argument, much of the law governing Appellants' contention is the same here, so we briefly recite it.  Rule of Civil Procedure 37(b)(2) permits sanctions when "a party fails to obey an order to provide or permit discovery . . . ."  N.C. Gen. Stat. § 1-1A, Rule 37(b)(2).  Thus, "[i]n general, 'sanctions under Rule 37 are imposed only for the failure to comply with a court order,'" i.e. failure to comply with a predicate order borrowing Appellants' term.  *Lovendahl v. Wicker*, 208 N.C. App. 193, 200, 702 S.E.2d 529, 534 (2010) (quoting *Pugh*, 113 N.C. App. at 379, 438

S.E.2d at 217).  Additionally, "[a] motion for a protective order under Rule 26(c) that is denied . . . may end in the same result as a motion to compel discovery under Rule 37(a): an order compelling discovery."  *Id.*  This similar result arises directly from the language of Rule 26(c) providing "[i]f the motion for a protective order is denied in whole or in part, the court may, on such terms and conditions as are just, order that any party or person provide or permit discovery."  *Id.* (quoting N.C. Gen. Stat. § 1A-1, Rule 26(c)) (alteration in original).  As a result, "violation of an order compelling discovery that results from a motion for a protective order may [also] be the basis for sanctions under Rule 37(b)."  *Id.*  We review the trial court's actions challenged in the predicate order arguments for abuse of discretion.  *See Myers*, 269 N.C. App. at 240, 837 S.E.2d at 447 ("As a general rule, we review the trial court's rulings regarding discovery for abuse of discretion."); *Feeassco*, 264 N.C. App. at 336, 826 S.E.2d at 209 (reviewing order granting motion for sanctions for abuse of discretion).

### 1. *Dunhill's Predicate Order Argument*

Dunhill argues "without a predicate order in place, the sanctions based on the 30(b)(6) deposition of Dunhill were inappropriate."  It also asserts the August 2019 Order "did not even purport to identify a predicate order regarding Dunhill's deposition." While Dunhill acknowledges the order denying its motion for a protective order, it argues that order was not specific enough for Dunhill to be required "to do anything other than provide prepared witnesses."  Finally, Dunhill argues the August

2019 Order erred by sanctioning Dunhill for previous misconduct by both it and by Mr. Lindberg.

¶ 72      Taking Dunhill's arguments in turn, it is simply wrong to argue the August 2019 Order failed to identify a predicate order. We have identified four examples of times the August 2019 Order referred to the trial court's previous order denying Dunhill's and Mr. Lindberg's Motion for a Protective Order and said Dunhill violated that previous order by failing to present prepared witnesses at its Rule 30(b)(6) deposition:

> 30.      On June 5, 2019, the Court entered a written order denying Dunhill's Motion for Protective Order, and expressly ordered that Dunhill make available for its Rule 30(b)(6) deposition an appropriate company designee for all noticed topics who was prepared to testify "as to 'all matters known and reasonably available to' Dunhill regarding each topic in the notice of deposition." *See* this Court's 6/5/2019 *Order on Dunhill Holdings, LLC and Greg Lindberg's Motion for Protective Order* (*citing* N.C. Gen. Stat. § 1A-1, Rule 30(b)(6)).
> . . .
> 42.      Dunhill's failure to prepare for its deposition, as it was required to do under Rule 30(b)(6) and this Court's 5 June 2019 Order . . . .
> . . .
> 47.      Brenda Lynch was designated as Dunhill's corporate representative to testify pursuant to Rule 30(b)(6) as to Dunhill's specific knowledge of Topics 1 and 2. Moreover, and as previously discussed above, pursuant to this Court's June 5, 2019 *Order on Dunhill Holdings, LLC and Greg Lindberg's Motion for Protective Order*, Dunhill was ordered by the Court to produce at the deposition an appropriate company designee who is

> prepared to testify "as to 'all matters known and reasonably available to' Dunhill regarding each topic in the notice of deposition." (citing N.C. Gen. Stat. § 1A-1, Rule 30(b)(6)).
>
> . . .
>
> 51.     The Court finds that Ms. Lynch's deposition testimony, given on behalf of Dunhill, represents a failure of Dunhill to adequately testify in response to Topics 1-43, in direct violation of this Court's 5 June 2019 Order on Dunhill and Mr. Lindberg's Motion for Protective Order described above.

(Emphasis in original.)  Dunhill does not challenge any of those Findings of Fact, so they are binding on appeal.  *See Feeassco*, 264 N.C. App. at 340, 826 S.E.2d at 211 (determining unchallenged findings of fact in a sanctions order were binding on appeal).  Based on these binding Findings of Fact, the trial court identified its order denying Appellants' motion for a protective order as the predicate order compelling discovery, which is allowed under *Lovendahl.*   208 N.C. App. at 200, 702 S.E.2d at 534.

Dunhill's failure to recognize the predicate order, upon which the trial court relied, might stem from its related argument that the order denying its motion for a protective order was not specific enough.  Dunhill cites no binding precedent to support that argument.[7]  However, in *Lovendahl,* this Court ruled an order denying

---

[7] In fact, Dunhill primarily cites unpublished federal district court opinions.  Citation to this Court's own unpublished opinions is "disfavored," N.C. R. App. P. 30(e)(3), so citation to other courts' unpublished opinions at least warrants the same treatment.  The citations here are

a motion for a protective order was sufficient to justify Rule 37(b) sanctions when the order merely required the defendant to "'submit to deposition within forty-five days of the date of this Order.'" 208 N.C. App. at 200–02, 702 S.E.2d at 534–35. Here, the trial court's order denying the motion for a protective order said:

> Accordingly, and pursuant to Rule 30(b)(6) of the North Carolina Rules of Civil Procedure, Dunhill Holdings, LLC shall appear as noticed on June 5 and 6, 2019 for its deposition and be prepared to testify, through an appropriate company designee, as to all "matters known or reasonably available to" Dunhill regarding each topic in the notice of deposition. N.C. Gen. Stat. § 1A-1, Rule 30(b)(6).

The trial court's order, specifically directing Dunhill's designee to be prepared to testify to all matters known or reasonably available on each noticed topic, is more specific than the language this Court found acceptable in *Lovendahl*. Therefore, we find the language here was specific enough that a violation of the order denying the motion for the protective order could support sanctions under Rule 37(b).

¶ 74    Turning to its final argument, Dunhill asserts "[t]he trial court erred by assuming it could enter sanctions based on the history of the parties' discovery disputes," especially since Mr. Lindberg is a separate individual according to Dunhill.

---

particularly inapposite because, as explained above, this Court has issued binding precedent on the issue. *See* N.C. R. App. P. 30(e)(3) ("If a party believes, nevertheless, that an unpublished opinion has precedential value to a material issue in the case *and that there is no published opinion that would serve as well*, the party may cite the unpublished opinion . . . .") (emphasis added).

Dunhill's arguments are unpersuasive. Dunhill quotes a portion of Conclusion of Law 141 that references a long pattern of violations of discovery orders, but that Conclusion appears under the heading "Sanctions Arising from Misconduct During Mr. Lindberg's Deposition." Dunhill seemingly ignores Conclusions of Law 114–28, which recount the basis for sanctions against Dunhill based on its Rule 30(b)(6) "Deposition Misconduct." Those Conclusions and the facts we recounted above detail how Dunhill was sanctioned not for its past misconduct but rather for its new failure to comply with the order compelling discovery that came out of the order denying Dunhill's motion for a protective order. Thus, Dunhill was sanctioned not for its previous misconduct—which was extensive as recounted in our analysis of the document production sanctions above—but rather for its new misconduct in depositions.

¶ 75      Dunhill also contends the trial court improperly conflated it with Mr. Lindberg, arguing "accusations of misconduct against a separate individual (like Mr. Lindberg) should not be part of the analysis." As recounted more fully above, Dunhill was sanctioned for its own failures. For example, unchallenged Finding of Fact 51 faulted *Dunhill* for failing "to adequately testify in response to Topics 1-43, in direct violation of this Court's 5 June 2019 Order on Dunhill and Mr. Lindberg's Motion for Protective Order described above." The underlying premise that Dunhill and Mr. Lindberg are separate is questionable. In unchallenged Findings of Fact, the trial court noted

evidence that Dunhill and Mr. Lindberg are not separate in general and specifically

"collu[ded]" in their deposition misconduct:

> 100. . . . . In fact, on numerous occasions, the corporate representatives at Dunhill's Rule 30(b)(6) deposition testified that they were not knowledgeable persons to testify regarding the noticed topics, and instead Mr. Lindberg, the sole owner and manager of Dunhill, was in fact the more knowledgeable individual about the noticed topics. [footnote] Counsel for Mrs. Lindberg thereafter reasonably proceeded to ask Mr. Lindberg about many of these same topics at his deposition, only to be met with his repeated refusals to answer relevant questions.
>
> 101. The Court finds that Greg Lindberg's refusal to answer relevant deposition questions, when combined with his sole ownership and control over Dunhill as a corporate entity, amounts to collusion between Dunhill and Greg Lindberg at their respective depositions to intentionally evade their discovery obligations in this matter and to purposefully withhold relevant information from Mrs. Lindberg and her counsel. The Court finds the same is true with respect to Dunhill and Mr. Lindberg's repeated violations of this Court's prior orders compelling them to produce documents and materials in discovery.

(Footnote omitted.) Given Dunhill's own misconduct warranted sanctions and its

connection to and collusion with Mr. Lindberg, we also reject this argument.

¶ 76 Thus, reviewing for abuse of discretion, we reject all of Dunhill's arguments

about the lack of a predicate order and its related objections.

### 2. *Mr. Lindberg's Predicate Order Argument*

¶ 77 Mr. Lindberg's predicate violations argument resembles Dunhill's argument,

but Mr. Lindberg also contends he was inappropriately sanctioned for invoking his

Fifth Amendment privilege against self-incrimination. Mr. Lindberg first mirrors Dunhill's arguments that no predicate order existed to justify sanctions and that the trial court erred by sanctioning Mr. Lindberg for past misconduct by both him and Dunhill. Then, Mr. Lindberg argues his "reluctance or refusal to answer some questions is not surprising" given that depositions in other litigation between him and Ms. Lindberg resulted in him "obtaining a protective order . . . that required Ms. Lindberg's counsel to remain six feet away from Mr. Lindberg."

¶ 78         Finally, Mr. Lindberg argues that despite the trial court acknowledging his deposition "could be affected by invocation of the Fifth Amendment privilege against self-incrimination" based on a then-pending criminal case, the trial court "[i]ronically . . . then *sanctioned* Mr. Lindberg for refusing to answer questions at his deposition." (Emphasis in original.) Mr. Lindberg contends "the right to discovery must yield to the privilege against compulsory self-incrimination" such that the trial court "erred in sanctioning Mr. Lindberg based on his deposition testimony." We address each of those arguments in turn.

¶ 79         First, Mr. Lindberg's argument that there was no predicate order in place is inaccurate. The trial court's order denying Dunhill's motion for a protective order also denied Mr. Lindberg's motion for a protective order. The trial court clearly denied Mr. Lindberg's motion for a protective order because it separately denied Mr. Lindberg's motion for a stay of proceedings. Thus, the order denying the motion for

a protective order in practice relies on the denial of the motion for a stay of proceedings. Since the denial of a motion for a protective order can have the same effect as an order compelling discovery, i.e. creating the requisite predicate order, *Lovendahl*, 208 N.C. App. at 200, 702 S.E.2d at 534, we look to the trial court's denial of the motion for a stay as well to evaluate the adequacy of any predicate order.

¶ 80        The trial court's order denying Mr. Lindberg's motion for a stay indicates Mr. Lindberg sought the stay because of pending criminal charges against him. The trial court's unchallenged Findings of Fact, however, highlight that "none of the claims, counterclaims, or causes of action alleged by the parties in this matter require them to prove facts that share a nexus with, or are substantially similar to, the allegations made against Mr. Lindberg in the separate criminal proceedings against him." Based on that fact and its subsequent analysis of Mr. Lindberg's prejudice arguments, the trial court denied Mr. Lindberg's motion for a temporary stay of proceedings.

¶ 81        The trial court's unchallenged Findings of Fact indicate it expressly considered Mr. Lindberg's upcoming deposition and rejected Mr. Lindberg's arguments about prejudice caused by allowing that deposition to proceed:

> 9. There is no unfair prejudice to Mr. Lindberg or Dunhill by denying Mr. Lindberg's Motion for Temporary Stay. To the extent Mr. Lindberg believes it in his best interest, he has a right in this civil action to assert his Fifth Amendment rights to not answer questions propounded to him in discovery. Moreover, during the hearing of this motion, Mrs. Lindberg's counsel voluntarily agreed that

> they would not ask Mr. Lindberg questions at his upcoming deposition about the facts contained in the Bill of lndictment attached as Exhibit 1 to Mr. Lindberg's motion.
> 10. Mr. Lindberg argues that he would be prejudiced by potentially having to invoke his Fifth Amendment right to refuse to answer questions at his upcoming deposition. However, the Court finds that no unfair prejudice would occur given the fact that Mr. Lindberg has failed to demonstrate a nexus of substantially similar facts or issues between his criminal proceeding and this civil action. . . .

¶ 82   The trial court also, as Mr. Lindberg highlights, converted into a binding court order the voluntary agreement of Ms. Lindberg's counsel not "to question Mr. Lindberg at his upcoming deposition in this action regarding the facts contained in the Bill of Indictment . . . ."  Thus, the trial court knew Mr. Lindberg's deposition would go ahead when it ordered the denial of his motion for a temporary stay and motion for a protective order.  It is reasonable to read that sequence of events as the trial court ordering Mr. Lindberg to attend his deposition, so we cannot find the trial court abused its discretion in viewing the denial of the motions for a temporary stay and for a protective order as the equivalent of an order compelling discovery and in sanctioning Mr. Lindberg for violating that order.  *See Myers*, 269 N.C. App. 240, 837 S.E.2d at 447–48 ("An abuse of discretion is a decision manifestly unsupported by reason or one so arbitrary that it could not have been the result of a reasoned decision.").

¶ 83   Having determined the trial court did not abuse its discretion by treating the

denial of Mr. Lindberg's motions for a protective order and temporary stay as a predicate order, we address Mr. Lindberg's argument he was improperly sanctioned for previous conduct by both him and Dunhill. As with Dunhill's similar argument, Mr. Lindberg's argument fails because he was sanctioned for his own new conduct. Looking just at Conclusion of Law 141 that Mr. Lindberg takes issue with in his brief, the trial court made it clear in the parts Mr. Lindberg omits that his own misconduct during the deposition justified its sanctions:

> 141. The Court further concludes that *Mr. Lindberg personally is subject to sanctions as a result of the many forms of misconduct he repeatedly employed during his personal deposition as described hereinabove*. Mr. Lindberg and Dunhill have engaged in a long pattern of violating the discovery orders of this Court as well as the Rules of Civil Procedure. *Mr. Lindberg's personal deposition obstruction and misconduct* is but the most recent in the long line of both his Dunhill's [sic] repeated prior violations of this Court's discovery orders and the discovery rules.

(Emphasis added.) Unchallenged Findings of Fact 59–98 recount in great detail, across five different subsections of misconduct, the "multiple forms of intentional obstruction and delay repeatedly employed by Greg Lindberg at his deposition." (Capitalization altered.) As just one example, the trial court included a table calculating the "**5 HOURS 47 MINS**" of deposition time "wasted due to Greg Lindberg's repeated tardiness" over two days. (Emphasis in original in first quotation; capitalization altered in second quotation.) Thus, the court sanctioned Mr.

Lindberg for his deposition misconduct alone and had ample support for its decision to do so.

¶ 84    Mr. Lindberg's next argument is about his "reluctance or refusal to answer some questions" because of the prior protective order requiring Ms. Lindberg's counsel to remain six feet away from him. Without reaching the issue of whether a protective order about physical distancing from another case could justify refusing to answer any questions in a deposition from this case where the trial court in this case had already denied a substantive motion for a protective order, we note that Mr. Lindberg's deposition here did not even involve the attorney whose actions were the basis for the prior protective order. While the prior protective order covered "Counsel for Plaintiff," which included one of Ms. Lindberg's attorneys who deposed Mr. Lindberg in this case, it is clear from the prior protective order that the conflict that led to the protective order involved another attorney who was not present at Mr. Lindberg's depositions in this case. Given the relevant attorney from the past conflict was not even present at this deposition, we reject any argument by Mr. Lindberg that this past history in any way impacts how we should view his "reluctance or refusal to answer some questions . . . ."

¶ 85    Finally, we reject Mr. Lindberg's argument that the trial court erred by sanctioning him for refusing to answer questions at his deposition after acknowledging Mr. Lindberg's deposition could be impacted by assertions of his Fifth

Amendment privilege against self-incrimination. The key issue with Mr. Lindberg's argument is that he never invoked his Fifth Amendment privilege during his deposition. "The Fifth Amendment privilege against compelled self-incrimination is not self-executing." *Roberts v. U.S.*, 445 U.S. 552, 559, 100 S. Ct. 1358, 1364 (1980). In the case of "the ordinary witness at a trial or before a grand jury who is subpoenaed, sworn to tell the truth, and obligated to answer on the pain of contempt," that person must "appear and answer questions truthfully . . . unless he invokes the privilege and shows that he faces a realistic threat of self-incrimination." *Minnesota v. Murphy*, 465 U.S. 420, 427, 104 S. Ct. 1136, 1142 (1984). A person's invocation of the Fifth Amendment privilege must be express. *Communist Party of U.S. v. Subversive Activities Control Bd.*, 367 U.S. 1, 108, 81 S. Ct. 1357, 1416 (1961) ("Nevertheless, it is not and has never been the law that the privilege disallows the asking of potentially incriminatory questions or authorizes the person of whom they are asked to *evade them without expressly asserting that his answers may tend to incriminate him.*" (emphasis added)). While "no ritualistic formula or talismanic phrase is essential in order to invoke the privilege against self-incrimination," the language of invocation at least needs to be such that a person "may reasonably be expected to understand [it] as an attempt to invoke the privilege." *Emspak v. U.S.*, 349 U.S. 190, 194, 75 S. Ct. 687, 690 (1955). For example, the United States Supreme Court has held language with references to the Fifth Amendment, even without

identifying the privilege specifically, is sufficient to invoke the privilege. *Id.*

¶ 86        Here, Mr. Lindberg never expressly invoked the privilege in the required manner. With one exception explained below, nothing related to the Fifth Amendment privilege against self-incrimination even came up in the transcript of Mr. Lindberg's deposition.[8] Rather, Mr. Lindberg instead decided to repeatedly—over 100 times according to the unchallenged Findings of Facts—say he "can't comment on that." The use of the phrase, "I can't comment on that" was not language that a person could "reasonably be expected to understand as an attempt to invoke the privilege" because it does not reference the privilege or even the Fifth Amendment. *Id.* As such, none of those instances can be considered invocations of Mr. Lindberg's Fifth Amendment privilege.

¶ 87        The one time the Fifth Amendment came up in the transcript of Mr. Lindberg's deposition—in response to one of Mr. Lindberg's "I can't comment" answers—, Ms. Lindberg's counsel expressly asked Mr. Lindberg if he was intending to invoke his privilege and Mr. Lindberg's counsel specifically told him he did not have to answer if he was intending to invoke his Fifth Amendment privilege:

---

[8] We searched the transcript for the following words "fifth"; "5th"; "amendment"; "privilege"; and "incrimination" and found no responses that discussed the Fifth Amendment privilege against self-incrimination other than the instance discussed in the main text. The search for the word "privilege" revealed numerous references to attorney-client privilege as well as a couple of references to professional-patient privilege, but Mr. Lindberg does not make any arguments about those privileges.

Q.      Refuse to answer. Did you not authorize Tisha Lindberg to sign your name on multiple documents?

A.      I can't comment on that.

Q.      Refuse to answer that question?

A.      I can't comment on it.

Q.      Well, if you can't comment, that to me means you are refusing to comment or answer.

A.      No. Saying I can't comment is a comment.

Q.      Why can't you comment? Mr. Lindberg, is the reason – one of the reasons you can't comment on many of these questions is because you intend to plead the Fifth Amendment?

Mr. Pace:      Objection. You don't have to answer that.

Mr. Zaytoun:      This is a civil case.

Mr. Pace:      Yes. And you've already represented to a judge that you wouldn't ask him any questions about that.

By Mr. Zaytoun:

Q.      Mr. Lindberg, is it – is it your intention to plead the Fifth Amendment to any of these questions that I've asked you where you said you can't comment?

Mr. Pace:      You don't have to answer that. I'll instruct you not to answer.

Mr. Zaytoun:      All right. Certify that. On what – would you state for the record the basis upon which you're instructing him not to answer that question.

Mr. Pace:      Because you represented to the judge that you would not use this case for discovery of any of the criminal proceedings.

Mr. Zaytoun:      No. This has nothing to do with the North Carolina indictment, my question.

Mr. Pace:      Oh, you're –

Mr. Zaytoun:      It has no- -- has – this has to do with Dunhill.[9]

---

[9] In unchallenged Findings of Fact, the trial court found the indictment in question did not mention Dunhill or Ms. Lindberg and did "not refer to facts or issues that create a nexus

> Mr. Pace:     We disagree.

In this case, Ms. Lindberg's counsel, rather than Mr. Lindberg or his counsel, made the reference to the Fifth Amendment privilege. The language Mr. Lindberg and his counsel used cannot be reasonably interpreted as an invocation. Unsurprisingly, as a result, Ms. Lindberg's counsel had to follow-up to clarify if Mr. Lindberg was invoking the privilege only for Mr. Lindberg's counsel to direct Mr. Lindberg not to answer whether he was invoking or not. Thus, Mr. Lindberg, through actions of his counsel, made a choice to not clarify he was expressly invoking his Fifth Amendment privilege as he was required to do to gain the privilege's protection. *Emspak*, 349 U.S. at 194, 75 S. Ct. at 690.

¶ 88        Since Mr. Lindberg never invoked his Fifth Amendment privilege against self-incrimination, the trial court could not have sanctioned him for such invocation, as he now argues. We therefore reject that argument and find the trial court did not abuse its discretion in sanctioning Mr. Lindberg for his deposition conduct.

**B. Dunhill's 30(b)(6) argument**

¶ 89        In the final argument against the sanctions for deposition conduct, Dunhill contends "the trial court misconstrued Rule 30(b)(6)." (Capitalization altered.) Rule

---

with, or are substantially similar to, the facts or issues involved in this civil action." Thus, by asking about Ms. Lindberg and Dunhill, Ms. Lindberg's attorney did not run afoul of the court order to not question Mr. Lindberg "regarding facts contained in" the indictment.

of Civil Procedure 30(b)(6) provides:

> A party may in his notice and in a subpoena name as the deponent a public or private corporation or a partnership or association or governmental agency and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which he will testify. A subpoena shall advise a nonparty organization of its duty to make such a designation. It shall not be necessary to serve a subpoena on an organization which is a party, but the notice, served on a party without an accompanying subpoena shall clearly advise such of its duty to make the required designation. *The persons so designated shall testify as to matters known or reasonably available to the organization.* This subsection (b)(6) does not preclude taking a deposition by any other procedure authorized in these rules.

N.C. Gen. Stat. § 1A-1, Rule 30(b)(6) (emphasis added). Dunhill's argument focuses on the meaning of the phrase "known or reasonably available" in the second to last sentence. Since this argument involves a review of the trial court's interpretation of a statute, we review it de novo. *Myers*, 269 N.C. App. at 240–41, 837 S.E.2d at 447–48.

¶ 90 After saying "[t]here are no North Carolina appellate opinions regarding the scope of Rule 30(b)(6)," Dunhill proceeds to make five arguments based primarily on analogies to federal law. We reject all of Dunhill's arguments without addressing the scope of Rule 30(b)(6) under North Carolina law. Rather, Dunhill's arguments all fail

based on the unchallenged, and therefore binding, Findings of Fact even when applying the law with which it argues. *See Feeassco*, 264 N.C. App. at 340, 826 S.E.2d at 211 (holding unchallenged Findings of Fact are binding on appeal). As a result for each of Dunhill's five arguments, we first present the law on which Dunhill relies directly from its brief and then explain why the facts here do not conform to that law's requirements.

¶ 91        Dunhill's first argument focuses on the preparation of deponents:

> When it comes to preparation for the deposition, the touchstone of this Rule is reasonableness. *See, e.g., Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 432-33 (5th Cir. 2006).[footnote omitted] Recognizing that "an individual cannot be expected to know every possible aspect of the organization's inner workings," courts have invariably acknowledged that the "standard for sanctions in this context is high." *Runnels v. Norcold, Inc.*, No. 1:16-cv-713, 2017 WL 3026915, at *1 (E.D. Va. Mar. 30, 2017) (unpublished) [Add. 84] (citing cases). A designee is not expected to present "a fully reliable and sufficiently complete account of all the bases for the contentions made and positions taken by the corporate party." *Stoneeagle Servs., Inc. v. Pay-Plus Sols., Inc.*, No. 8:13-CV-2240-T33MAP, 2015 WL 12843846, at *2 (M.D. Fla. Apr. 29, 2015) (unpublished) [Add. 88].

(All alterations in original exception noting omission of footnote.) Dunhill then recounts how its witnesses were "well prepared" and "testified for two entire days regarding the requested topics creating more than 700 pages of testimony."

¶ 92        The cases Dunhill presents indicate that reasonableness means that the

designated individuals do not have to know everything completely but rather must

know a reasonable amount and be reasonably prepared to answer questions. While

Dunhill's designees may have testified to some topics, they seemingly lacked any

preparation or knowledge as to certain other topics. For example, the unchallenged

Findings of Fact indicate one of Dunhill's designees, Mr. Neal, was unable to answer

any questions about electronic devices used by Mr. Lindberg and had not even

attempted to learn that information prior to his deposition:

> 38. During the questioning of Mr. Neal, he was completely unprepared to address many of his designated topics. Most notably, Mr. Neal was unable to address Topic 49 regarding Mr. Lindberg's electronic devices and computers, which stated:
>> All Computers and electronic devices used by Greg Lindberg from January 1, 2014 to the present, including:
>>> a. Number, types and locations
>>> b. Operating systems with versions, dates of use and upgrade history
>>> c. Application software with versions, dates of use and upgrade history.
> 39. Mr. Neal testified at deposition, on behalf of Dunhill, that he did not know this information, he did not learn this information prior to the deposition, nor had he ever attempted to ask Mr. Lindberg personally to identify Mr. Lindberg's computers and devices. Instead, Mr. Neal merely sent an email to two people who work for Mr. Lindberg about Mr. Lindberg's electronic devices, but never received a response to his email and did not follow up. This represents a clear and total failure of Dunhill to testify in response to Topic 49 during its deposition, in direct violation of this Court's 5 June 2019 Order on Dunhill and Mr. Lindberg's Motion for Protective Order

described above.

40. Mr. Neal was also unable to identify the location of the servers that house the parties' emails, which Dunhill was required to be prepared to identify under deposition Topics 44, 60, 67 and 71. Mr. Neal could only identify the third-party email hosting service provider that Dunhill utilizes, but he could not identify the location of any of the servers. When pressed on his inability to provide the location of the email servers, Mr. Neal testified that he was confused about the meaning of the word "location" and thought that it meant something other than its plain English meaning. This, too, represents a failure of Dunhill to adequately testify in response to Topics 44, 60, 67 and 71, in direct violation of this Court's 5 June 2019 Order on Dunhill and Mr. Lindberg's Motion for Protective Order described above.

¶ 93        As the portion about Mr. Neal believing the word "location" had something other than its ordinary meaning indicates, Dunhill also cannot claim the two days and 700 pages of testimony from its witnesses all shows its compliance either. Further to that point, the trial court specifically found Dunhill's other designee, Ms. Lynch, "intentionally and repeatedly gave evasive and longwinded responses to interfere with the deposition time available . . . ." Given these Findings alone, Dunhill cannot credibly claim that its designees were even reasonably prepared to testify as to the designated topics.

¶ 94        Dunhill's second argument is not based on any new law; instead, Dunhill argues that the trial court "summarily found that Dunhill 'did not provide a witness prepared to testify as to the Rule 30(b)(6) designated deposition topics'—apparently

all 73 of them." In making this contention, Dunhill omits the critical opening part of the quote indicating that the trial court was referring to the specific topics it had already discussed:

> *As articulated above*, Dunhill (necessarily acting by and through its sole owner, member, and manager, Mr. Lindberg) did not provide a witness prepared to testify as to the Rule 30(b)(6) designated deposition topics and provide the responsive information known or reasonably available to the organization. Dunhill (and by necessary extension Mr. Lindberg) has, therefore, violated the Court's 5 June 2019 discovery Order and is subject to sanctions for failing to comply with the same pursuant to Rule 37(b).

(Emphasis added.) With the full quote, it is clear the trial court was not saying Dunhill had failed to provide a prepared witness for all 73 topics. The trial court was saying it had not provided a prepared witness for the topics it already discussed, including those it incorporated by reference to the corrected motion for sanctions, above in its Findings of Fact. Thus to the extent Dunhill argues the trial court erred by finding it did not present a prepared witness for all 73 topics, we reject that argument.

¶ 95 Dunhill's final three arguments all are responding to the basis for the trial court's above conclusion, as they "appear[]" to Dunhill. With each of these arguments, Dunhill presents more law justifying its position, and as with the first argument, we reject Dunhill's contentions as their proffered law applies to the facts here.

¶ 96 Dunhill first claims the basis for the sanctions for failure to present a prepared witness was "that the witness referred to documents produced in litigation." For its supporting law, Dunhill stated:

> Referring to documents was proper because "Rule 30(b)(6) is not designed to be a memory contest." *Risinger v. SOC, LLC*, 306 F.R.D. 655, 663 (D. Nev. 2015); *see also Runnels*, 2017 WL 3026915, at *1 [Add. 84] (explaining that organizational representatives "are not expected to be a corporate encyclopedia"). There is no requirement "that a Rule 30(b)(6) witness be able to testify at a deposition without referencing documentation to supplement the testimony." *BreathableBaby, LLC v. Crown Crafts, Inc.*, No. 12-cv-94 (PJS/TNL), 2013 WL 3350594, at *8 (D. Minn. May 31, 2013) (unpublished) [Add. 25], adopted by 2013 WL 3349999 (D. Minn. July 1, 2013). Thus, the fact that a witness has to review documents before answering questions does not make the witness unfit. *Baker v. St. Paul Travelers Ins. Co.*, 670 F.3d 119, 125 (1st Cir. 2012).

Dunhill then argues its witnesses acted properly because they "repeatedly stated that answers could be found in the documents that had been produced."

¶ 97 Without even relying on our above conclusion affirming the sanctions against Dunhill for its document production on the eve of this deposition, the law Dunhill cites does not help it here. As seen in the last case Dunhill cites, that law is about whether a witness can review documents before answering questions, not whether they can use documents in place of their answer. The latter—i.e. using documents in place of their answer—appears to be what happened here even in the examples Dunhill provides. For example, it cites to a portion of Ms. Lynch's deposition where

she indicates a produced document might exist that answers the question:

> Here, the witnesses repeatedly stated that answers could be found in the documents that had been produced. (*See, e.g.*, Lynch Depo.(II) 283 ("Q. What specific facts support that . . . allegation? A. There would be bank statements, bank ledgers that would show when the withdrawals were – were made, when items were paid and for what.")).

Here, in addition to the fact that Ms. Lynch is using a document instead of answering, she is not even citing to a specific document but rather says there "would be," i.e. without certainty, support in some documents that presumably were produced. This non-answer does not in any way resemble the acceptable means laid out by Dunhill's proffered law above. Underlining the inadequacy of using a vague reference to potential documents in place of answers, the trial court specifically found that Ms. Lynch "could not identify any specific document or email from the hundreds of thousands of pages of the discovery" to support Dunhill's allegations. For these reasons, we reject this argument.

¶ 98   Turning to its fourth argument, Dunhill contends the trial court improperly concluded its witnesses were not prepared because "the witnesses could not recall certain information, such as the exact date of events." To support this argument, Dunhill provides the following law and argument:

> Likewise, the witnesses properly testified to the best of their recollection. A witness "cannot be expected to have predicted the exact questions she would face in deposition." *BreathableBaby*, 2013 WL 3350594, at \*8 [Add. 25]. Thus,

> the fact that a witness does not have all information at her
> fingertips is not surprising. Even an imperfect deposition
> is not subject to sanctions. *Runnels*, 2017 WL 3026915, at
> *3 [Add. 85]. This is particularly true when the questions
> relate to conduct by individuals. (*See, e.g.*, Lynch Depo.(II)
> 370-71 (asking Ms. Lynch about Ms. Lindberg's allegations
> regarding promises made by Mr. Lindberg)).

Again, Dunhill overlooks the extent to which its designees were completely unprepared as to certain topics. The case law it cites is about whether a witness should be expected to predict the *exact* questions in a deposition and to have *all* the information at its fingertips. Here, Dunhill's deponents did not have *any* information on certain topics, as laid about above. Put another way, this was not an imperfect deposition; as to certain topics on which the designees provided no answers, this deposition in effect did not happen at all.

¶ 99 Dunhill's final argument is that the trial court erred by faulting Dunhill's designees when they "could not comprehensively explain Dunhill's legal theories." To support this contention, Dunhill included the following law and argument:

> Finally, the designees could not have been expected to
> testify about legal theories beyond their basis for the
> allegations. (*See* Lynch Depo.(II) 236-38, 246-47, 328-30,
> 458-59). As the Business Court has recognized, it is
> "impracticable" for a company "to prepare one or more
> witnesses to testify about 'all facts' and 'all evidence' that
> support more than half a dozen claims and defenses."
> *Addison Whitney, LLC v. Cashion*, 2020 NCBC 48 ¶ 112,
> 2020 WL 3096793, at *19 (June 10, 2020) (unpublished)
> [Add. 16]. Yet, that is precisely what Ms. Lindberg's
> counsel expected.

> The 30(b)(6) designees appropriately limited their testimony to facts rather than legal theories. Sanctions are improper when the deponent was "able to testify regarding the evidence and facts underlying the allegations." *FTC v. Vylah Tec LLC*, No. 2:17-cv-228-FtM-PAM-MRM, 2018 WL 7361111, at *3 (M.D. Fla. Dec. 18, 2018) (unpublished) [Add. 46]. Indeed, this Court has indicated that a 30(b)(6) witness is not expected to testify about the law at all. *Bullard v. Wake Cty.*, 221 N.C. App. 522, 535, 729 S.E.2d 686, 694 (2012); *see also Snapp v. United Transp. Union*, 889 F.3d 1088, 1104 (9th Cir. 2018) (similar), *cert. denied*, 139 S. Ct. 817 (2019). Thus, Ms. Lindberg's counsel had no basis to complain when he asked "You're really not a very knowledgeable corporate designee, are you . . . about Dunhill if you can't even tell me the basics of what Dunhill is, what an LLC is versus a corporation"? (Lynch Depo.(II) 424).

¶ 100    Dunhill's arguments can be broken down into two.  First, as the cite to the North Carolina business court indicates, Dunhill is arguing that a designee cannot be expected to know all facts or evidence to support a number of claims.  The problem with that argument, as with similar arguments above, is that Dunhill's designees did not provide *any* evidence.  The trial court's unchallenged Finding of Facts indicate that Ms. Lynch "was completely unprepared to provide *any* specific information or knowledge to explain the basis for any of Dunhill's claims or allegation categories listed in topics 1 or 2" (emphasis added), which were the two topics that related to the basis for Dunhill's claims against Ms. Lindberg.

¶ 101    The second piece of Dunhill's argument is that the sanctions improperly

faulted its designees for not providing legal theories. Again, this argument does not comport with the August 2019 Order, which specifically faulted the designees for not being able to provide *evidence* rather than legal theories. For example, the trial court found Ms. Lynch could not identify evidence to support any of the claims in the Dunhill lawsuit:

> Importantly, Ms. Lynch was never able to identify a single document, communication, or other piece of evidence that Dunhill knew of or contended was supportive of any of the claims or allegations in the Dunhill lawsuit.

As the trial court noted:

> This is especially troubling given that Dunhill has represented to this Court, through its counsel, that it possesses specific emails, text messages, photographs, and other materials it contends supports Dunhill's claims and allegations against Mrs. Lindberg. *See e.g.* Dunhill's 11 July 2019 *Verified Response to [Corrected] Tisha L. Lindberg's Motion for Sanctions Regarding Deposition of Dunhill Holdings, LLC*, at page 2, in which Dunhill's counsel describes specific "emails," "text messages," "pictures," "bank records," as well as Mrs. Lindberg's "written assurance" and "admissions," all of which Dunhill claims are in its possession and knowledge as supportive of its claims against Mrs. Lindberg in this action.

These findings make it clear Dunhill was sanctioned because its designees could not provide evidence rather than because they failed to supply legal theories.

¶ 102 As we have rejected each of Dunhill's Rule 30(b)(6) arguments, we find the trial court did not err here either. Thus, we find no error by the trial court with regard to

any of its sanctions for Appellants' deposition misconduct and failures.

## VI. Choice of Sanctions

¶ 103       Appellants' final arguments that take issue with the August 2019 Order present a series of alleged errors under the heading, "Even if the court had the authority, the choice of sanctions was improper." (Capitalization altered.) First, both Appellants argue "[t]here is a disconnect between the purported violations and the sanctions imposed." (Capitalization altered.) Both Appellants also contend the August 2019 Order "is internally inconsistent." Finally, Mr. Lindberg presents two arguments on his own that the August 2019 Order "impermissibly allows for disclosure of privileged information" and that "[t]here was not proper notice" as to the basis of sanctions against him. We address each of those arguments in turn.

### A. Disconnect Argument

¶ 104       Appellants' first argument about the disconnect between the violations and the sanctions is really a series of arguments that amounts to the contention that the choice of sanctions was improper. First, Appellants argue the trial court improperly believed that it had "unfettered discretion." Then, Appellants argue discovery sanctions under Rule 37 "must be equitable." As part of this argument, Appellants contend, by relying on federal court cases, default judgment and taking a party's allegations as established are powerful and should only be used in the most extreme circumstances. Appellants further support their equity argument by indicating

North Carolina has a policy favoring deciding cases on the merits rather than entry of default judgment. Finally, Dunhill argues the August 2019 Order "is especially problematic because it deemed certain facts 'established' even though they are contrary to the record evidence," particularly on the allegation that Mr. Lindberg is the alter ego of Dunhill.

¶ 105 Appellants' first argument omits a key portion of the sentence that shows the trial court understood its discretion was subject to limits. Specifically, the full sentence in the trial court order says, "[T]he tailoring of sanctions in a particular case is limited only by the judge's imagination *and the possibility of appellate review*." (Emphasis added to show the part omitted by the parties.) Thus, the trial judge knew he did not have unfettered discretion and was subject to appellate review. In fact, looking at the surrounding Conclusions of Law, the trial court explained in detail how it was subject to the abuse of discretion standard on appeal and how "North Carolina appellate courts have routinely affirmed the trial court's decision to impose severe sanctions for discovery abuses and violations of court orders including dismissing actions and claims, and striking pleadings."

¶ 106 The trial court further acted within the discretion described by *Turner v. Duke University*, the case which Appellants highlight as being applied in error, in imposing sanctions. 101 N.C. App. 276, 399 S.E.2d 402 (1991). As Appellants note, *Turner* differentiates between the discretion offered by statutes that do not authorize specific

types of sanctions (Rules of Civil Procedure 11 and 26) and statutes that do, such as

Rule of Civil Procedure 37(b)(2). *Id.*, 101 N.C. App. at 279–80, 399 S.E.2d at 405.

The trial court here followed the strictures of Rule 37. As relevant here, Rule 37(b)(2)

authorizes the following types of sanctions:

> a. An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;
> b. An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting the party from introducing designated matters in evidence;
> c. An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

N.C. Gen. Stat. § 1A-1, Rule 37(b)(2)(a)–(c). Rule 37 also authorizes the trial court to

order the party failing to obey a court order "to pay reasonable expenses, including

attorney's fees" in certain situations. *Id.*, Rule 37(b)(2). Here, all the trial court's

sanctions under Rule 37(b)(2) adhered to those categories. The remainder of the

sanctions all related to ordering discovery to continue or rejecting certain objections

made in discovery, so they fit within Rule 37(a)(2)'s allowance of an order compelling

discovery. N.C. Gen. Stat. §1A-1, Rule 37(a)(2). Thus, Appellants incorrectly assert

the trial court believed it had unfettered discretion; the trial court understood its

discretion was subject to limits, and it stayed within those limits. The trial court did

not abuse its discretion.

¶ 107        Turning to Appellants' next argument, both misinterpret what our courts mean when they say sanctions must be just.  While the "as just" language comes directly from Rule 37(b)(2), *see* N.C. Gen. Stat. § 1A-1, Rule 37(b)(2) (authorizing the court to "make such orders in regard to the failure [to comply with a discovery order] as are just"), our courts have indicated the language refers to the grant of discretion to the trial court.  *See Stone v. Martin*, 69 N.C. App. 650, 652, 318 S.E.2d 108, 110 (1984) (citing the language about justness immediately before saying, "The matter *thus* is within the trial courts discretion."  (emphasis added)); *Global Furniture, Inc. v. Proctor*, 165 N.C. App. 229, 232, 598 S.E2d 232, 234 (2004) ("The trial court is given broad discretion to 'make such orders in regard to the failure as are just' . . . ." (quoting N.C. Gen. Stat. § 1A-1, Rule 37(b))).  As a result, the trial court has only failed to impose sanctions as are just if it has abused its discretion.

¶ 108        As noted above, the trial court only imposed those sanctions specifically authorized by Rule 37(b)(2) and did not abuse its discretion in that manner.  Beyond that, generally "[t]he choice of sanction under Rule 37 lies within the court's discretion and will not be overturned on appeal absent a showing of abuse of that discretion."  *Routh v. Weaver*, 67 N.C. App. 426, 429, 313 S.E.2d 793, 795 (1984).  Before a court imposes severe sanctions, such as dismissing an action with prejudice, it "must consider less severe sanctions."  *See Hursey v. Homes by Design, Inc.*, 121

N.C. App. 175, 179, 464 S.E.2d 504, 507 (1995) ("[B]efore dismissing a party's claim with prejudice pursuant to Rule 37, the trial court must consider less severe sanctions.") (citing *Goss v. Battle*, 111 N.C. App. 173, 177, 432 S.E.2d 156, 159 (1993)). Critically, "[t]he trial court is not required to *impose* lesser sanctions, but only to *consider* lesser sanctions." *Global Furniture*, 165 N.C. App. at 233, 598 S.E.2d at 235 (emphasis in original) (citing *Goss*, 111 N.C. App. at 177, 432 S.E.2d at 159).

¶ 109        In determining whether the trial court properly considered lesser sanctions, this Court has noted, "the trial court is not required to list and specifically reject each possible lesser sanctions prior to determining that dismissal is appropriate." *Batlle*, 198 N.C. App. at 421, 681 S.E.2d at 798 (quoting *Badillo v. Cunningham*, 177 N.C. App. 732, 735, 629 S.E.2d 909, 911 (2006)).   Language stating the trial court considered lesser sanction but had reason to impose the more severe sanctions is sufficient.  In *Batlle*, this Court found the following statements sufficient to determine the trial court had not abused its discretion by failing to consider less severe sanctions:

> The trial court found in the 21 September 2007 order that:
>
>> The Court has considered lesser discovery sanctions, and dismissal of Plaintiff's lawsuit with prejudice is the only just and appropriate sanction in view of the totality of the circumstances of the case, which demonstrate the severity of Plaintiff's disobedience in failing to make discovery in a lawsuit she instituted and her unjustified noncompliance with

the mandatory North Carolina Rules of Civil Procedure.

Based upon this finding, the trial court concluded in the 21 September 2007 order that:

> The Court has considered lesser sanctions than dismissal of Plaintiff's lawsuit with prejudice. Lesser sanctions would be unjust and inappropriate in view of the totality of the circumstances of the case, which demonstrate the severity of the disobedience of Plaintiff in refusing to make discovery in a lawsuit she instituted, her unjustified noncompliance with the mandatory North Carolina Rules of Civil Procedure, and untimely response on the day of the hearing.

*Id.*, 198 N.C. App. at 421–22, 681 S.E.2d at 798–99. This Court reached that conclusion because that language was similar to language this Court had previously found acceptable in both *In Re Pedestrian Walkway Failure* and *Cunningham. Id.*, 198 N.C. App. at 422, 681 S.E.2d at 798–99; *see also Baker v. Charlotte Motor Speedway, Inc.*, 180 N.C. App. 296, 301, 636 S.E.2d 829, 833 (2006) (finding no abuse of discretion when similar language was used). By contrast, the trial court abuses its discretion when it only considers one option and even admits it did not consider lesser sanctions. *See Global Furniture*, 165 N.C. App. at 234, 598 S.E.2d at 235 (finding abuse of discretion on those facts).

¶ 110        Here, the trial court properly considered lesser sanctions. In a heading entitled "Consideration of Lesser Sanctions," the trial court made nine Findings of Fact

recounting how it considered the arguments of Dunhill and Mr. Lindberg for lesser sanctions and ultimately rejected them. Before laying out the fact-specific reasons why lesser sanctions would not be effective here, including the past failures of lesser sanctions to ensure compliance, the trial court said:

> The Court, in its discretion, has considered all available sanctions in light of Dunhill and Mr. Lindberg's actions described herein, including specifically whether sanctions lesser than those requested in Mrs. Lindberg's Motions would be appropriate. The Court, in its discretion, finds that the evidence before it shows that that [sic] lesser sanctions would not be appropriate based on the conduct and repeated discovery abuses of Dunhill and Mr. Lindberg, nor would lesser sanctions achieve the desired effect of correcting and/ or deterring the misconduct of Dunhill and Mr. Lindberg described herein.

This paragraph alone is similar to the paragraph this Court previously found was sufficient in *Batlle.* 198 N.C. App. at 421–22, 681 S.E.2d at 798–99.

¶ 111    In addition to sufficient analysis in the Findings of Fact alone, the trial court included a similarly detailed analysis in its Conclusions of Law under the heading, "Harsh Sanctions are Warranted Here." After recounting the previous misconduct by Dunhill and Mr. Lindberg as well as its discretionary authority to impose harsh sanctions, the trial court indicated again that it had considered all sanctions and gave its reasoning for why lesser sanctions were not enough:

> 162. The Court, in its discretion, has considered all available sanctions in light of Dunhill and Mr. Lindberg's actions described herein, including specifically whether

> sanctions lesser than those requested in Mrs. Lindberg's
> Motions would be appropriate. The Court, in its discretion,
> finds that the evidence before it shows that that [sic] lesser
> sanctions would not be appropriate nor would they achieve
> the desired effect of correcting and/ or deterring the
> misconduct of Dunhill and Mr. Lindberg described herein.
> 163. The Court concludes that monetary sanctions are not
> likely to have any beneficial effect on either Mr. Lindberg
> or Dunhill in deterring either from furthering their efforts
> to evade their discovery obligations or from future conduct
> in clear violation of this Court's discovery orders.
> 164. The Court likewise concludes that lesser discovery
> sanctions such as requiring Dunhill or Mr. Lindberg to sit
> for additional deposition sessions, or provide additional
> discovery by a date certain, are not likely to have any
> beneficial effect on either Mr. Lindberg or Dunhill in
> deterring either from furthering their efforts to evade their
> discovery obligations or from future conduct in clear
> violation of this Court's discovery orders.
> 165. In summary, Dunhill and Mr. Lindberg have made it
> clear that they believe the litigation process is a game, one
> where they make all the rules, regardless of what this
> Court orders or the rules of discovery say to the contrary,
> and, therefore, striking pleadings is the only appropriate
> remedy to redress their misconduct.

Based on *Batlle*, Conclusion 162 alone was enough for us to conclude that the trial court did not abuse its discretion. 198 N.C. App. at 421–22, 681 S.E.2d at 798–99. Here, the trial court went above and beyond what was required, laying out in detail its reasoning why lesser sanctions were not enough. Given this explanation, the trial court did not abuse its discretion in its choice of sanction.

¶ 112    In their reply briefs, Appellants argue the caselaw requiring a court to consider lesser sanctions misses the point of their argument. They explain their argument is

that even if the trial court "had the authority to enter sanctions, the sanctions imposed were excessive." This argument seemingly relates back to Appellants' arguments that (1) default judgment and taking a party's allegations as established are powerful and should only be used in the most extreme circumstances and (2) North Carolina has a policy favoring deciding cases on the merits rather than entering default judgment. Both of these arguments, while generally true and persuasive, are not controlling here.

¶ 113        The first argument about default judgment only being used in the most extreme circumstances is not persuasive in part because of the authority Appellants use to support it. In making the argument, Appellants rely exclusively on federal caselaw, rather than North Carolina precedents. Federal cases may be persuasive in other areas of interpreting our Rules of Civil Procedure given some overlap in design. *See Harvey Fertilizer & Gas Co. v. Pitt County*, 153 N.C. App. 81, 87, 568 S.E.2d 923, 927 (2002) (looking to federal court decisions for guidance because Rule 24 of the North Carolina Rules of Civil Procedure was "virtually identical" to the federal rule before stating "we are not bound by the interpretation of any particular federal court as to the interpretation of our own rules of civil procedure) (citing, *inter alia, Turner v. Duke University*, 325 N.C. 152, 164, 381 S.E.2d 706, 713 (1989) for the first point of looking to federal courts for guidance and *State ex rel. Martin v. Preston*, 325 N.C. 438, 449–50, 385 S.E.2d 473, 479 (1989) for the second point of not being bound by

the federal courts).

¶ 114      On the issue of choice of sanctions, however, our precedents have explicitly rejected the federal approach. *See Hursey*, 121 N.C. App. at 179, 464 S.E.2d at 507 (summarizing *Fulton v. East Carolina Trucks, Inc.*, 88 N.C. App. 274, 275, 362 S.E.2d 868, 869 as "specifically rejecting plaintiff's argument that North Carolina courts should adhere to the rule adopted in the federal courts that dismissal with prejudice is a last resort and is generally proper only where less drastic sanctions are unavailable"). As this Court explained in *Fulton*:

> Although the federal rule is laudable and best serves the judicial preference in favor of deciding cases on the merits, our courts have not adopted the federal rule. Indeed, this court's precedent all but expressly rejects the notion of progressive sanctions. This court has upheld dismissals in several cases when no previous less stringent sanction was ordered.

88 N.C. App. at 275, 362 S.E.2d at 869 (collection of cases omitted). Thus, we reject Appellants' argument that we should follow federal caselaw indicating default judgment should only be used in the most extreme case.

¶ 115      While Appellants rely upon North Carolina caselaw in arguing this state has a policy favoring deciding cases on the merits rather than entering default judgment, they misunderstand that precedent, which works hand-in-hand with the requirement that courts consider lesser sanctions. By considering lesser sanctions, the trial court is doing the very thing for which Appellants press, ensuring that this case is one

where it should impose a harsh penalty in spite of the general policies disfavoring default judgment and favoring trial on the merits. *See Stone*, 69 N.C. App. at 653–54, 318 S.E.2d at 111 (highlighting the law disfavors default judgments so as to allow as many cases as possible to reach trial on the merits); *American Imports, Inc. v. G.E. Emp. Western Region Federal Credit Union*, 37 N.C. App. 121, 124, 245 S.E.2d 798, 800 (1978) (explaining the general purpose of the Rules of Civil Procedure is "to encourage trial on the merits" (quotations and citation omitted)). Here, the trial court did just that; as explained more fully above, the trial court recounted in detail why harsh sanctions were necessary in this case, thereby showing why otherwise disfavored sanctions such as default judgment and dismissal were warranted.

¶ 116 Finally, under the disconnect sub-heading, Dunhill argues the August 2019 Order "is especially problematic because it deemed certain facts 'established' even though they are contrary to the record evidence," particularly on the allegation that Mr. Lindberg is the alter ego of Dunhill. As part of this argument, Dunhill took issue with two facts the trial court ruled established: (1) "that Ms. Lindberg never misappropriated funds from Dunhill and never took advantage of her position," and (2) "that Mr. Lindberg is the alter ego of Dunhill." The problem with both these arguments is that Dunhill provides no support for its claim that the trial court could not deem certain facts established even though they were contrary to some evidence in the record. Rule 37(b)(2) explicitly authorizes a trial court to make an order that

"any other designated facts shall be taken to be established for the purposes of the action" without any caveat that those facts must not be contradicted by at least some of the evidence in the record. N.C. Gen. Stat. § 1A-1, Rule 37(b)(2)(a). Given the clear statutory authorization of these sanctions, we do not accept Dunhill's argument that the trial court erred because some of the facts it established might conflict with some evidence in the record.

¶ 117 Further, the mere presence of contrary evidence in the record is not surprising because our courts exist to resolve disputes about, among other things, evidence. Rule 37(b)(2)(a) allows certain facts to be designated as a sanction for disrupting discovery, which is part of the process of resolving such disputes. *See King v. Koucouliotes*, 108 N.C. App. 751, 755, 425 S.E.2d 462, 464 (1993) ("The recognized primary purpose of discovery 'is to facilitate the disclosure prior to trial of any unprivileged information that is relevant and material to the lawsuit *so as to permit the narrowing and sharpening of the basic issues and facts that will require trial.*'" (quoting *Bumgarner v. Reneau*, 332 N.C. 624, 628, 422 S.E.2d 686, 688–89(1992)) (emphasis added)). Thus, parties can comply with discovery and resolve their disputes through the regular mechanisms of our courts; but, if they fail to comply with discovery and are thus subject to Rule 37(b)(2) sanctions, the court can resolve those disputes for the parties by establishing certain facts against the party who failed to follow the normal process. *See* N.C. Gen. Stat. § 1A-1, Rule 37(b)(2)(a)

(providing that a court can designate certain facts as established as a discovery sanction). As laid out above, the existence of and choice of discovery sanction fell to the trial court because of Dunhill's repeated, significant discovery violations. If Dunhill wanted to argue that the facts in the record supported its contentions, it should have complied with the discovery rules and court orders and thereby participated in the normal methods of dispute resolution our courts offer. As with the other arguments, we reject Dunhill's argument that the trial court abused its discretion by deeming certain facts established when there was some evidence to the contrary in the record.

## B. Internal Consistency of the Order

¶ 118    Appellants' other joint argument is that the August 2019 Order "is internally inconsistent." Specifically, Appellants contend the Order is inconsistent because it struck their pleadings, entered default judgment against them, and took facts alleged by Ms. Lindberg as true but then still required them to sit for another deposition. Appellants also each point to the trial court's Finding of Fact that additional deposition sessions are unlikely to deter them from evading discovery obligations.

¶ 119    "Inconsistent judgments are erroneous." *Graham v. Mid-State Oil Co.*, 79 N.C. App. 716, 720, 340 S.E.2d 521, 524 (1986). As such a judgment cannot be supported when it is "actually antagonistic, inconsistent, or contradictory as to material matters." *Lackey v. Hamlet City Bd. Of Ed.*, 257 N.C. 78, 84, 125 S.E.2d 343, 347

(1962). However, courts "endeavor to reconcile" such inconsistencies when it is possible, i.e. when the material matters are not "really inconsistent with each other." *Id.*, 257 N.C. at 84, 125 S.E.2d at 347–48. As such, reviewing courts should first try to "harmonize" the "apparently conflicting" portions of a judgment. *See Spencer v. Spencer*, 70 N.C. App. 159, 168, 319 S.E.2d 636, 644 (1984) (harmonizing apparently conflicting findings of fact by determining they "clearly reflect[ed]" the trial court's conclusion when read in context). If the reviewing court cannot harmonize the conflicting portions, those portions must be vacated and remanded for the trial court to cure the inconsistency. *See Lackey*, 257 N.C. App. at 84, 125 S.E.2d at 348 (vacating and remanding judgment for inconsistent findings of fact and directing on remand that the facts be corrected).

¶ 120      Here, we reject Appellants' argument that ordering them to sit for new depositions after the court found additional deposition sessions would not deter them from evading discovery obligations was inconsistent because that Finding of Fact can be harmonized with the rest of the judgment. *Spencer*, 70 N.C. App. at 168, 319 S.E.2d at 644. Finding 113 about the lack of benefit from additional deposition sessions is part of the trial court's section considering lesser sanctions. Thus, when the trial court was saying additional depositions would not be helpful, it was justifying its imposition of default judgment as to issues of liability. As a compliment to only imposing default judgment as to liability, the trial court "reserved for trial"

the damages issue as to both Appellants. The order of additional depositions therefore applied to damages issues rather than liability. Further, given the purpose of sanctions is to "prevent or eliminate dilatory tactics on the part of unscrupulous attorneys or litigants," *Essex Group, Inc. v. Express Wire Services, Inc.*, 157 N.C. App. 360, 363, 578 S.E.2d 705, 707 (2003), the trial court's goal in imposing harsh sanctions here was to ensure that the depositions on damages do not include such tactics. Therefore, any additional depositions are consistent as long as they are limited to the issue of damages.

¶ 121        The additional deposition of Mr. Lindberg is appropriately limited to the issue of damages. Paragraph 16 of the August 2019 Order requires Mr. Lindberg to sit for another deposition and answer questions "that are relevant to any of her [Ms. Lindberg's] counterclaims or damages claims." Beyond the damages claims, the counterclaims also related to damages, specifically compensatory damages from Dunhill and imposing a constructive trust over the tennis complex. While the counterclaims also involve Ms. Lindberg's allegation that Mr. Lindberg is an alter ego of Dunhill, which would have been covered by the default judgment, we can harmonize that portion of the order by reading the word "any" in relation to Ms. Lindberg's counterclaims to mean any counterclaims on the issue of damages. That harmonization is similar to *Spencer* where this Court reconciled apparently inconsistent findings by avoiding "unduly literal stress" on a word. 70 N.C. App. at

168, 319 S.E.2d at 644. Therefore, we find no internal inconsistency as to the additional deposition of Mr. Lindberg.

¶ 122        We find, however, internal inconsistency with the order for an additional deposition for Dunhill. The August 2019 Order requires Dunhill to sit again for its Rule 30(b)(6) "deposition and designate ten days in advance persons for <u>all</u> previously-noticed topics who are prepared to testify as to all matters known and reasonably available to[] Dunhill regarding each topic in the notice of deposition." (Emphasis in original.) The previously-noticed topics included issues relevant to liability alone. For example, Topic 1, as summarized in the same August 2019 Order, asked for "[t]he basis for any claims or allegations made by Dunhill against" Ms. Lindberg in the lawsuit. Given that the August 2019 Order explicitly dismissed, with prejudice, "[a]ll claims for relief asserted by Dunhill in this action," not all previously-noticed topics need to be covered at another deposition. We cannot reconcile this inconsistency because the emphasis on "all" in the order makes it clear the trial court's intention to include topics unrelated to damages such as Topic 1. *See Lackey*, 257 N.C. at 84, 125 S.E.2d at 347–48 (directing courts to reconcile inconsistencies if possible). Therefore, we vacate the paragraph ordering Dunhill to sit for another deposition and remand for clarification that Dunhill's new deposition only cover damages.

**C. Order and Privileged Information**

¶ 123　　　Turing to Mr. Lindberg's individual arguments, he contends the August 2019 Order erred by ordering him to sit for another deposition and answer all questions from Ms. Lindberg's counsel without objection. Specifically, Mr. Lindberg argues this language would require him to answer questions even on topics that should be protected by privileges such as attorney-client privilege or the Fifth Amendment's privilege against self-incrimination.

¶ 124　　　The language of the Order requiring Mr. Lindberg to sit for another deposition is as expansive as he claims. Specifically it erroneously requires him "to answer, without objection, all questions posed by Mrs. Lindberg's counsel that are relevant to any of her counterclaims or damages claims." As Mr. Lindberg correctly argues, this order could require him to answer questions that are otherwise subject to at least attorney-client privilege.[10]

¶ 125　　　A court cannot pre-determine that a person cannot claim attorney-client privilege as doing so would amount to a forced waiver by the trial court rather than the client. *See Crosmun v. Trustees of Fayetteville Technical Community College*, 266

---

[10] Mr. Lindberg also argues his Fifth Amendment privilege against self-incrimination might apply, but Ms. Lindberg points out that the criminal charges Mr. Lindberg previously faced resulted in his conviction in 2020. Because the possibility of a Fifth Amendment privilege is not dispositive based on our analysis of attorney-client privilege, we do not analyze the Fifth Amendment privilege issue.

N.C. App. 424, 439–40, 832 S.E.2d 223, 236 (2019) ("Critically, it [the attorney-client privilege] is the client's alone to waive, for '*[i]t is not the privilege of the court or any third party.*'") (emphasis and second alteration in original) (quoting *In re Miller*, 357 N.C. 316, 338, 584 S.E.2d 722, 788 (2003)). Rather, once the privilege is asserted, and only then, the trial court can step in and determine whether the attorney-client privilege applies. *See In re Miller*, 357 N.C. at 336, 584 S.E.2d at 787 (noting "a trial court is not required to rely solely on an attorney's assertion that a particular communication falls within the scope of the attorney-client privilege"). Thus, the trial court erred to the extent its order bars Mr. Lindberg from asserting his attorney-client privilege.

¶ 126      Ms. Lindberg highlights the trial court previously overruled many of Mr. Lindberg's attorney-client privilege objections from his first deposition in its August 2019 Order. Ms. Lindberg is correct in that the order separately bars Mr. Lindberg from reasserting attorney-client privilege with respect to those documents, and Mr. Lindberg does not challenge that paragraph. The trial court's error was that it barred Mr. Lindberg from asserting *new* attorney-client privilege objections. Therefore, we vacate the paragraph ordering Mr. Lindberg to sit for a new deposition on damages and answer all questions without objection. On remand, the trial court will clarify that, in his deposition on damages, Mr. Lindberg can assert objections, including privileges, that have not been previously overruled.

### D. Proper Notice

¶ 127　　　Mr. Lindberg's final solo argument under the choice of sanctions issue heading is that he "was not on proper notice." Specifically, he contends that he only had notice for sanctions as to his deposition conduct, not as to the document production issues. He also argues that he was not on notice that the sanctions imposed may include being precluded from introducing evidence or arguments or that default judgment might be entered against him.

¶ 128　　　Taking Mr. Lindberg's second argument first, he presents no authority for his contention that the trial court can only impose the exact sanctions requested by the other party. Both of the cases he cites involve situations where a party was sanctioned for *conduct* for which it was not on notice. *See Griffin v. Griffin*, 348 N.C. 278, 280, 500 S.E.2d 437, 438–39 (1998) (finding party did not have proper notice because he was put on notice he was subject to sanctions for one filing but was actually sanctioned for a different filing); *OSI Restaurant Partners, LLC v. Oscoda Plastics, Inc.*, 266 N.C. App. 310, 315, 831 S.E.2d 386, 390 (2019) (finding party did not have proper notice any sanctions would be imposed).

¶ 129　　　Mr. Lindberg had proper notice of the conduct for which sanctions were sought and that these sanctions were under Rule 37(b)(2); there was no need for any specific notice that he may be sanctioned by preclusion from introducing evidence and entry of default judgment. First, *OSI Restaurant Partners* explains the notice required is

"(1) of the fact that sanctions may be imposed, and (2) the alleged grounds for the imposition of sanctions." 266 N.C. App. at 315, 831 S.E.2d at 390 (quoting *Megremis v. Megremis*, 179 N.C. App. 174, 179, 633 S.E.2d 117, 121 (2006)). Notably, *OSI Restaurant Partners* says nothing about the choice of sanctions. Further, the sanctions imposed were specifically authorized by Rule 37(b)(2), N.C. Gen. Stat. § 1A-1, Rule 37(b)(2), and Ms. Lindberg's supplemental motion for sanctions indicated she was moving for sanctions pursuant to, *inter alia*, Rule 37(b). The supplemental motion also explicitly requested "[t]hat the court enter any further relief it deems just and proper pursuant to Rule 37(b) . . . ." Based on that language, Mr. Lindberg was on notice that any Rule 37(b) sanction could be imposed. For all these reasons, we reject Mr. Lindberg's argument that he did not have proper notice of the type of sanctions to be imposed.

¶ 130    Turning to his other argument, Mr. Lindberg contends he did not receive proper notice that he could be sanctioned for the document production. As explained above, a person subject to sanctions must have notice "(1) of the fact that sanctions may be imposed, and (2) the alleged grounds for the imposition of sanctions" as a matter of due process. *OSI Restaurant Partners*, 266 N.C. App. at 315, 831 S.E.2d at 390; *Griffin*, 348 N.C. at 280, 500 S.E.2d at 438 (linking this notice to Fourteenth Amendment due process). "Our Court has held that a party sanctioned under Rule 37 ha[s] [constitutionally adequate] notice of sanctions where the moving party's

written discovery motion clearly indicate[s] the party [is] seeking sanctions under Rule 37." *OSI Restaurant Partners*, 266 N.C. App. at 315, 831 S.E.2d at 390 (alterations in original) (quoting *Megremis*, 179 N.C. App. at 179, 633 S.E.2d at 121).

¶ 131        Here, Mr. Lindberg received the notice required by due process via Ms. Lindberg's supplemental motion for sanctions against him. The written supplemental motion for sanctions indicated Ms. Lindberg was moving for sanctions under, *inter alia*, Rule 37(b), thereby satisfying *OSI Restaurant Partners*'s first requirement of notice that sanctions may be imposed under Rule 37. *Id.*

The supplemental motion also satisfied the second requirement because it indicated Mr. Lindberg could be subject to sanctions for the document production. *See id.* (requiring notice of "the alleged grounds for the imposition of sanctions"). The supplemental motion for sanctions specifically moved for entry of sanctions against Mr. Lindberg and Dunhill "for their repeated and willful violations of the Court's prior discovery orders and the Rules of Civil Procedure." In the corrected motion for sanctions, which Ms. Lindberg specifically "incorporated by reference herein [in the supplemental motion] as if fully restated," Ms. Lindberg included four paragraphs detailing how the 129,000 page document production by Dunhill *and Mr. Lindberg* days before Dunhill's deposition was part of the reasons she was moving for sanctions.

Further, the supplemental motion requested, among other sanctions, that "*neither Mr. Lindberg* nor Dunhill" be allowed to use any of the documents in the 129,000 page

document production. (Emphasis added.) Logically, a sanction barring Mr. Lindberg from using documents in a certain production would be based on misconduct related to that production. Given all this information in the supplemental motion for sanctions against Mr. Lindberg, we determine Mr. Lindberg received proper notice as to the conduct subject to sanctions. As a result, we reject Mr. Lindberg's final argument under the heading choice of sanctions as well.

## VII. Forensic Examination

¶ 132    Finally, Appellants both incorporate the arguments made in their prior appeal that challenged the "ordered forensic examination" on the basis that it "was an inappropriate invasion of privacy." As Appellants note and as we explained more fully above, the ruling in the prior appeal directed us to consider the issues in that appeal when we decided the sanctions issues in this appeal. *Dunhill I* at *12. Therefore, we address the issue.

¶ 133    Before potentially reaching the merits of the discovery issues raised in the prior appeal, we note the prior appeal carried mootness concerns. As the prior panel's opinion summarized, Ms. Lindberg filed a motion to dismiss the appeal, arguing "the appeal is moot because she has filed a 'Notice of Withdrawal of Forensic Search Request' with the trial court, removing the underlying motion to compel discovery." *Dunhill I* at *11. Ms. Lindberg also filed a document in the prior appeal arguing "that the trial court's imposition of a final sanctions order on 1 August 2019," i.e. the

sanctions order on appeal here, mooted the dispute over the forensic examination discovery order. *Dunhill I* at \*11. Based on these arguments and the concerns of the prior panel,[11] we examine mootness and ultimately conclude the forensic examination issue is moot.

¶ 134 "A case is 'moot' when a determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy." *Roberts v. Madison County Realtors Ass'n, Inc.*, 344 N.C. 394, 398–99, 474 S.E.2d 783, 787 (1996). Put another way, "[w]henever, during the course of litigation it develops that the relief sought has been granted or that the questions originally in controversy between the parties are no longer at issue, the case should be dismissed, for courts will not entertain or proceed with a cause merely to determine abstract propositions of law." *In re Peoples*, 296 N.C. 109, 147, 250 S.E.2d 890, 912 (1978). In our state courts, mootness is not a jurisdictional issue "but rather represents a form of judicial restraint." *Id.* Thus, unlike jurisdiction, "the issue of mootness is not determined solely by examining facts in existence at the commencement of the action. If the issues before a court or administrative body become moot at any time during the course of the proceedings, the usual response should be to dismiss the action." *Id.*,

---

[11] Even if this history of mootness concerns did not exist, we could have addressed the issue *ex mero motu*. *See State ex rel. Rhodes v. Gaskill*, 325 N.C. 424, 426, 383 S.E.2d 923, 925 (1989) (dismissing appeal *ex mero motu* for mootness).

296 N.C. at 148, 250 S.E.2d at 912; *see also Comer v. Ammons*, 135 N.C. App. 531, 536, 522 S.E.2d 77, 80 (1999) ("An appeal which presents a moot question should be dismissed.").

¶ 135      Applying the mootness doctrine here, the August 2019 Order mooted the forensic examination issue because it granted all the relief sought via the forensic examination. *In re Peoples*, 296 N.C. at 147, 250 S.E.2d at 912. To understand how the August 2019 Order granted all the relief requested without actually granting a forensic examination, we review the original reasoning behind the request, as limited by the June 2018 Order, for a forensic examination.

¶ 136      Appellee sought the forensic examination for purposes of discovering documents relevant to liability issues. First, the motion to compel discovery that led to the forensic inspection order indicated the forensic examination would help prove the spoliation claim as laid out in Ms. Lindberg's Amended Counterclaims and Third-Party Complaint:

> Upon information and belief, Mr. Lindberg and Dunhill have intentionally attempted to destroy evidence from computers and electronic devices that is relevant to this matter. The spoliation of evidence by Mr. Lindberg and Dunhill was set out in the pleadings in this matter in Mrs. Lindberg's Amended Counterclaims and Third-Party Complaint. For example, upon information and belief, Mr. Lindberg and Dunhill destroyed emails and computer files maintained by Mr. Lindberg's companies soon after Mr. Lindberg took out the *Ex Parte* Domestic Violence Protective Order and restricted her access to email servers.

> Requests for Inspection 23 and 24 to Dunhill and Requests for Inspection 23 and 24 to Greg Lindberg seek to inspect the computers, drives and devices of Mr. Lindberg and Dunhill, but they have refused to allow for this inspection. Mrs. Lindberg respectfully requests that the Court order such a forensic computer inspection.

¶ 137 Looking in turn at Ms. Lindberg's Amended Counterclaims and Third-Party Complaint, the spoliation claim related to the deletion of emails that corroborated Ms. Lindberg's claim that two pieces of real estate were gifted to her as her sole property:

> 164. Mrs. Lindberg is informed and believes that Mr. Lindberg has spoliated critical material evidence, including many emails exchanged between them, corroborating that he gifted both the Key West House and tennis complex to her as her sole property. Specifically, Mrs. Lindberg's email account in 2017 was maintained on a server controlled exclusively by Mr. Lindberg. Mr. and Mrs. Lindberg exchanged numerous emails regarding the acquisition of the Key West House as her birthday gift and the gift of the tennis complex to her.
> . . .
> 166. Mr. Lindberg deleted Mrs. Lindberg's emails at some time following his involuntary commitment of Mrs. Lindberg in May or June, 2017. This purposeful deletion of Plaintiffs emails constitutes spoliation of material evidence which Mr. Lindberg has deleted to avoid confirmation that the Key West House and the Tennis complex were gifted to Mrs. Lindberg.

As part of her prayer for relief, Ms. Lindberg sought constructive trust over one of those pieces of property, the tennis complex. While Ms. Lindberg's pleading mentions a Key West house, that property was not at issue in this lawsuit. Rather, as clarified

at the June 2018 hearing on the motion to compel, the Key West house was, at least at that time, part of a separate lawsuit in Florida.[12] Because the June 2018 Order limited the forensic examination to, *inter alia*, "[a] determination as to whether emails or text messages dealing with real estate holdings *subject to dispute in this lawsuit* exist or ever existed, and producing copies of the same for the parties," (emphasis added), the trial court implicitly denied the request as to the Key West house, so we need not further examine that portion of the request. Based on the motion to compel and its references to the pleadings, the forensic examination sought to advance Ms. Lindberg's spoliation argument and provide evidence to support her claim the tennis complex was gifted to her and should be placed in a constructive trust.

¶ 138      The purposes for the forensic examination advanced by Ms. Lindberg at the hearing on the motion to compel are broadly similar. At the hearing, Ms. Lindberg's counsel repeatedly emphasized the forensic examination sought to uncover emails that would support her spoliation claim and show the Florida house and the tennis complex were gifts to her personally. Ms. Lindberg also raised two new purposes for the forensic examination at the hearing. First, she said the emails she believed the

---

[12] An earlier version of Ms. Lindberg's third-party complaint and counterclaim also sought control of the Florida house, but that was not included in the amended version of that document that we discuss above. *See Dunhill I* at *3 (summarizing the claims in the original and amended third-party complaint and counterclaim pleadings).

forensic examination would uncover would also prove the allegation "on the money being her money." This appears to relate to Ms. Lindberg's denial of Dunhill's claims that she took funds from Dunhill, which was the animating claim in this suit. *See Dunhill I* at \*3 (Dunill claiming Ms. Lindberg took funds from it and Ms. Lindberg "denying various allegations of Dunhill").

¶ 139     The second new purpose for the forensic examination was that it would uncover emails "specifically related to the yacht claim." This purpose relates to Ms. Lindberg's claim for indemnity as to a deposit on a yacht vacation that Ms. Lindberg claims she made on behalf of Mr. Lindberg.

¶ 140     With the exception of the Florida house, the June 2018 Order's grant of the forensic examination confined its scope to those purposes:

> 5. Dunhill Holdings LLC and Greg Lindberg shall make the server or any electronic device housing, hosting, or storing the outlook email account used by the parties available for a forensic examination, but that inspection and examination is limited to:
>     a. A determination as to whether emails or text messages between Mr. Lindberg and Mrs. Lindberg exist or ever existed, and producing copies of the same for the parties;
>     b. A determination as to whether emails or text messages dealing with real estate holdings subject to dispute in this lawsuit exist or ever existed, and producing copies of the same for the parties;
>     c. Whether any of those email or text messages, if there were any, have been intentionally deleted and, if deleted, the circumstances of any deletion and whether or not they can be recovered.

¶ 141    The first paragraph granting the forensic examination appears to encompass all the listed purposes. The second paragraph relates to the tennis complex as the real estate holding subject to dispute in this lawsuit. The final paragraph relates to spoliation, i.e. "a party's intentional destruction of evidence in its control before it is made available to the adverse party . . . ." *Holloway v. Tyson Foods, Inc.*, 193 N.C. App. 542, 547, 668 S.E.2d 72, 75 (2008) (quoting *Red Hill Hosiery Mill, Inc. v. MagneTek, Inc.*, 138 N.C. App. 70, 78, 530 S.E.2d 321, 328 (2000)).

¶ 142    All these purposes, as defined by the June 2018 Order, related to issues of liability between the parties. The money, tennis complex, and yacht purposes all relate directly to proving claims or defenses made by the parties. Specifically, the emails that would be uncovered by the forensic examination "would prove every single allegation about these promises [Mr. Lindberg] made to [Ms. Lindberg]" on the tennis complex and the money Dunhill claims Ms. Lindberg improperly took. The lost emails could help prove the yacht claim according to Ms. Lindberg's counsel. Notably, all three of those claims featured a dispute on liability, i.e. whether promises were made, etc., rather than the amount of money the claim would be worth. The money issue was a defense against Dunhill's claim Ms. Lindberg took its funds, so Dunhill would know the amount.

¶ 143    As to the tennis complex, Ms. Lindberg seeks a constructive trust rather than monetary damages. And as to the yacht claim, Ms. Lindberg seeks indemnity "for all

amounts she is required to pay" if found liable for the yacht rental. Thus, none of these claims feature a dispute as to damages. Ms. Lindberg either wins on liability and keeps the money she received from Dunhill and receives a constructive trust and indemnification, or she loses and does not.

¶ 144 Finally, the spoliation claim could only possibly relate to liability, not damages, because "the spoliation of evidence principle is an evidentiary matter" that "can give rise to an inference that the evidence destroyed would injure its (the party who destroyed the evidence) case." *Holloway*, 193 N.C. App. at 547, 668 S.E.2d at 75–76 (in the second part of the quote, quoting *Red Hill Hosiery Mill*, 138 N.C. App. at 78, 530 S.E.2d at 328). In other words, spoliation is not a claim that allows for recovery of damages. Thus, the spoliation could only go to liability when the evidence allegedly spoliated would prove Ms. Lindberg's arguments on liability. Because the forensic examination would only provide evidence relevant to questions of liability, it would only have a practical effect on the controversy if liability were still at issue. *Roberts*, 344 N.C. at 398–99, 474 S.E.2d at 787.

¶ 145 The August 2019 sanctions order renders the forensic examination request and order moot because it resolves all liability issues in favor of Ms. Lindberg. Specifically, it dismisses with prejudice "[a]ll claims for relief asserted by Dunhill in this action" and it enters judgment by default against both Dunhill and Mr. Lindberg,

and in favor of Ms. Lindberg, "on the issue of liability for each of" Ms. Lindberg's claims in the action.

¶ 146 It also established as true all facts related to Dunhill's claim against Ms. Lindberg for improperly taking funds. Finally, the August 2019 Order specifically bars Dunhill and Mr. Lindberg from opposing at trial the issue of liability in Ms. Lindberg's favor on her claims against them. Since the August 2019 Order has already determined all issues on liability, the relief Ms. Lindberg sought via the forensic examination has been granted, and the provisions regarding forensic examination are moot. *In re Peoples*, 296 N.C. at 147, 250 S.E.2d at 912.

¶ 147 Appellants' only response to Ms. Lindberg's argument in the prior appeal that the sanctions order mooted the forensic examination issue was that "the referenced order has been appealed." As explained above, we have now upheld the relevant parts of the sanctions order, i.e. the parts on liability, against all of Appellants' arguments, so Appellants' prior response has no persuasive force. The merits of the forensic examination issue are not addressed and are dismissed as moot.

## VIII. Conclusion

¶ 148 The trial court did not abuse its discretion in (1) sanctioning Appellants for their document production behavior, (2) sanctioning Appellants for their deposition misconduct, and (3) choosing sanctions, except as to two sanctions as described below Those portions of the sanctions order are affirmed.

We vacate the August 2019 Order's sanctions in paragraphs 13 and 16 and remand to the trial court to ensure any new depositions ordered in those paragraphs are limited to the issue of damages only and do not bar a party from asserting objections, particularly asserting attorney-client or other rights and privileges, not previously ruled upon. Finally, because we affirm the sanctions deciding all issues of liability in favor of Ms. Lindberg, we hold the provisions regarding forensic examinations are moot.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

Judges TYSON and ZACHARY concur.